PAGES 1 - 69

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE MAXINE M. CHESNEY

IN RE:  CHASE BANK USA, N.A.       )
"CHECK LOAN" CONTRACT LITIGATION,  )
                                   ) MDL NO. 09-2032
                                   )
                                   ) SAN FRANCISCO, CALIFORNIA
                                   ) FRIDAY, MARCH 18, 2011
_____)


**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES:**

**PLAINTIFFS' LIAISON**    LIEFF, CABRASER, HEIMANN & BERNSTEIN,
**COUNSEL**    275 BATTERY STREET
    30TH FLOOR
    SAN FRANCISCO, CALIFORNIA  94111
    BY:  **ELIZABETH J. CABRASER, ESQUIRE**
    **MICHAEL W. SOBOL, ESQUIRE**
    **ROGER N. HELLER, ESQUIRE**

**FOR PLAINTIFFS**    THE STURDEVANT LAW FIRM
    354 PINE STREET
    FOURTH FLOOR
    SAN FRANCISCO, CALIFORNIA  94104
    BY:  **JAMES C. STURDEVANT, ESQUIRE**

    GIRARD GIBBS
    601 CALIFORNIA STREET
    14TH FLOOR
    SAN FRANCISCO, CALIFORNIA  94108
    BY:  **ERIC H. GIBBS, ESQUIRE**
    **GEOFFREY A. MUNROE, ESQUIRE**

(FURTHER APPEARANCES ON FOLLOWING PAGE)

*REPORTED BY:*   *JOAN MARIE COLUMBINI, CSR 5435, RPR*
    *OFFICIAL COURT REPORTER, U.S. DISTRICT COURT*

**APPEARANCES (CONTINUED):**


FOR PLAINTIFFS          **GREEN WELLING**
                        595 MARKET STREET
                        SUITE 2750
                        SAN FRANCISCO, CALIFORNIA  94108
                   BY:  **ROBERT S. GREEN, ESQUIRE**


FOR DEFENDANTS          STROOCK & STROOCK & LAVAN
                        2029 CENTURY PARK EAST
                        LOS ANGELES, CALIFORNIA  90067
                   BY:  **JULIA B. STRICKLAND, ESQUIRE**
                        **STEPHEN J. NEWMAN, ESQUIRE**

1                    <u>**PROCEEDINGS; FRIDAY, MARCH 18, 2011**</u>

2

3              **THE CLERK:**  CALLING MDL NUMBER 09-2032, IN RE: CHASE

4    BANK U.S.A. CHECK LOAN CONTRACT LITIGATION.

5              **THE COURT:**  OKAY, COUNSEL.  STEP FORWARD, PLEASE.

6              **MS. STRICKLAND:**  GOOD MORNING, YOUR HONOR.  JULIA

7    STRICKLAND FOR DEFENDANTS.

8              **THE COURT:**  THANK YOU.

9              **MR. NEWMAN:**  STEPHEN NEWMAN FOR DEFENDANTS, YOUR

10   HONOR.

11             **THE COURT:**  MR. NEWMAN, THANK YOU.

12             **MS. CABRASER:**  GOOD MORNING, YOUR HONOR.  ELIZABETH

13   CABRASER FOR PLAINTIFFS.

14             **THE COURT:**  THANK YOU.

15             **MR. STURDEVANT:**  GOOD MORNING, YOUR HONOR.  JIM

16   STURDEVANT, ALSO FOR THE PLAINTIFFS.

17             **THE COURT:**  MR. STURDEVANT.

18             **MR. GIBBS:**  GOOD MORNING, YOUR HONOR.  ERIC GIBBS FOR

19   THE PLAINTIFFS, ALONG WITH GEOFF MUNROE.

20             **THE COURT:**  THANK YOU.

21             **MR. HELLER:**  GOOD MORNING, YOUR HONOR.  ROGER HELLER

22   FOR THE PLAINTIFFS, ALONG WITH MICHAEL SOBEL.

23             **MR. SOBEL:**  GOOD MORNING, YOUR HONOR.  MICHAEL SOBEL

24   FOR THE PLAINTIFFS.

25             **THE COURT:**  THANK YOU.

1          **MR. GREEN:**  GOOD MORNING, YOUR HONOR.  ROBERT GREEN

2    FOR THE PLAINTIFFS.

3          **THE COURT:**  THANK YOU, MR. GREEN.

4          I DON'T KNOW HOW MANY PEOPLE INTEND TO ADDRESS THIS

5    MATTER.  HOPEFULLY, ONLY ONE LAWYER PER ISSUE, MAYBE ONLY ONE

6    LAWYER FOR THE WHOLE MOTION.  IF MULTIPLE PEOPLE ARE GOING TO

7    BE PARTICIPATING, PARTICULARLY FROM THE PLAINTIFFS' SIDE,

8    PLEASE STATE YOUR APPEARANCE WHEN YOU COME UP SO THAT THE

9    REPORTER CAN KEEP YOU STRAIGHT.

10         OKAY.  ALL RIGHT.  WHAT WE HAVE HERE IS, AS YOU WELL

11   KNOW, THE MOTION FOR CLASS CERTIFICATION.  THERE WAS KIND OF AN

12   11TH-HOUR FILING FROM THE DEFENDANTS WITH A STATEMENT OF A

13   RECENT CASE PROMPTING THE PLAINTIFF THEN TO FILE A MOTION TO

14   FILE DOCUMENTS UNDER SEAL.  I HAVEN'T REALLY LOOKED AT THOSE

15   DOCUMENTS YET, BUT IT'S APPARENTLY IN RESPONSE.

16         IS THAT CORRECT, MS. CABRASER?

17         **MS. CABRASER:**  THAT IS CORRECT, YOUR HONOR.

18         WE GOT -- WE SAW THE FILING YESTERDAY AFTERNOON.  WE

19   RESPONDED TO IT.  YOU HAVE THE RESPONSE.  WE ATTACHED THE

20   SCRIPT AND OUR REPORT OF AN OCTOBER 2008 FOCUS GROUP THAT CHASE

21   HAD CONDUCTED.  WE REFERRED TO THE FOCUS GROUP IN OUR REPLY, I

22   THINK, AT THE BOTTOM OF PAGE 9, TOP OF PAGE 10.  WE DID NOT

23   ATTACH IT AT THAT TIME.  I THINK WE SHOULD HAVE.  WE WOULD LIKE

24   THE COURT TO REVIEW IT BECAUSE WE THINK IT'S DIRECTLY

25   PERTINENT, NOT ONLY TO THE POINT THAT CHASE RAISED AT THE 11TH

1  HOUR, BUT THE OTHER POINTS THAT HAVE BEEN MADE IN THE CASE.

2      **THE COURT:**  WELL, THEY JUST GAVE ME A CASE THAT THEY

3  SAID THEY DIDN'T KNOW ABOUT.  I'M NOT SURE HOW RELEVANT THE

4  CASE IS, FRANKLY.

5      **MS. CABRASER:**  WE WOULD ARGUE IT'S NOT.

6      **THE COURT:**  WE CAN GET TO THAT IF WE HAVE TO, BUT I'M

7  NOT SURE ABOUT CHANGING THE RECORD ON A DIFFERENT POINT.  YOU

8  HAD WANTED TO THEN PUT IN NEW EVIDENCE THAT'S REALLY NOT

9  RELATED TO THIS ISSUE OF THE -- DO YOU FEEL IT'S RELATED TO THE

10 ISSUE OF THE DAMAGES?

11     **MS. CABRASER:**  WE DO FEEL IT IS RELATED, YOUR HONOR,

12 BECAUSE WHAT CHASE DID WAS SUBMIT A CASE FROM LAST YEAR, A

13 TRIAL-COURT-LEVEL CASE IN DELAWARE.  WE THINK IT'S FACTUALLY

14 INAPPOSITE, BUT, NONETHELESS, CHASE USES THAT CASE TO MAKE A

15 POINT ABOUT THE PREDOMINANCE OF INDIVIDUAL DAMAGES ISSUES.

16     OUR POINT IS NOT ONLY THAT PREDOMINANCE DEALS WITH

17 LIABILITY ISSUES IN THE NINTH CIRCUIT, BUT THAT DAMAGES CAN BE

18 DETERMINED UNDER CLASSWIDE METHODOLOGIES AND FORMULA.  AND WE

19 THINK THAT THE FOCUS GROUP SCRIPT AND REPORT COMPLETES THE

20 CHRONOLOGY WHICH IS DETAILED IN THE EXHIBITS WE HAD SUBMITTED.

21 IT FILLS A GAP.

22     **THE COURT:**  LET'S WAIT AND SEE HOW THE CONVERSATION

23 GOES.

24     **MS. CABRASER:**  ALL RIGHT.

25     **THE COURT:**  OR THE HEARING, JUST BECAUSE AT SOME

1  POINT WE SHOULD HAVE THE RECORD RESOLVED HERE, AND IT COULD

2  KEEP EXPANDING, I AM AFRAID.

3          **MS. STRICKLAND:**  YOUR HONOR, MAY I ACTUALLY RESPOND

4  ON THIS POINT?  BECAUSE WE RECEIVED THE SAME 11TH-HOUR FILING.

5  AND WITH DUE RESPECT TO MS. CABRASER, THEIR FILING ACTUALLY IS

6  IN VIOLATION OF THE LOCAL RULES AND IN NO WAY RESPONDS.

7          WE SUBMITTED SUPPLEMENTAL AUTHORITY WHICH WAS FIRST

8  POSTED ON WESTLAW IN FEBRUARY OF THIS YEAR, AND SO IT WAS JUST

9  LOCATED.  WE SUBMITTED CONSISTENT WITH THE LOCAL RULES.  WE

10 GAVE THE COURT THE CASE.  WE DIDN'T ARGUE.

11         **THE COURT:**  ALL RIGHT.  LET ME JUST SAY I'M NOT SURE

12 THAT THE DELAWARE CASE REALLY IS CONTROLLING HERE BECAUSE

13 THEY'RE RELYING ON THE THIRD CIRCUIT, AND THE NINTH CIRCUIT HAS

14 A MORE GENEROUS VIEW WITH RESPECT TO DAMAGES.

15         **MS. CABRASER:**  CORRECT, YOUR HONOR.

16         **THE COURT:**  I SUPPOSE IF YOU HAD A DAMAGE ISSUE WHICH

17 JUST TOTALLY OVERWHELMED EVERYTHING ELSE, THAT THAT MIGHT START

18 TO GET INTO PLAY HERE.  BUT THE NINTH CIRCUIT IS FAIRLY LENIENT

19 ABOUT DIFFERENCES IN DAMAGES.

20         SO BEFORE WE GET TO THAT POINT -- AND THERE WAS EVEN

21 A QUESTION -- THIS IS WHAT I DIDN'T UNDERSTAND THE DELAWARE

22 CASE THAT I TOOK A LOOK IT.  IT SOUNDED LIKE SOME PEOPLE HAD NO

23 DAMAGES AT ALL.  AND IF THEY DIDN'T HAVE ANY DAMAGES, I DON'T

24 KNOW WHY THEY WERE IN THE CLASS.

25         IN OTHER WORDS, IF SOMEBODY IS A CLASS MEMBER BECAUSE

1  THEY HAD TO PAY AN ARGUABLY IMPROPER FEE, THAT MADE THEM A

2  CLASS MEMBER; THEN IF THEY DIDN'T PAY BECAUSE SOMEONE

3  OVERLOOKED THEM, OR WHATEVER HAPPENED, THEN WHY WERE THEY IN

4  THE CLASS AT ALL?  THEY DIDN'T HAVE ANY DAMAGES.

5          THAT'S DIFFERENT THAN HAVING DAMAGES AND HAVING A

6  DIFFERENT AMOUNT OF DAMAGE THAN SOMEBODY ELSE.  SO THE WHOLE

7  THING WAS THROWING ME OFF A BIT.  I DON'T WANT TO GET HUNG UP

8  ON THE TAIL HERE BECAUSE WE HAVEN'T EVENT GOTTEN TO THE DOG.

9  THAT WAS SOMETHING I WANTED TO MENTION THAT I BARELY HAD A

10 CHANCE TO LOOK AT, AND THEN I SAW THERE WAS A RESPONSE.

11         I THINK WE SHOULD JUST GO AHEAD AT THE MOMENT WITH

12 WHAT THE MAIN ARGUMENTS ARE HERE AND NOT GET HUNG UP ON THAT.

13         **MS. CABRASER:**  WE WILL BE HAPPY TO DISCUSS IT IN

14 CONTEXT.

15         **THE COURT:**  ALL RIGHT.  WHAT I UNDERSTAND HERE IS

16 THAT -- I WANT TO MAKE ONE THING CLEAR.  THERE ARE NUMBER OF

17 ARGUMENTS THE DEFENDANT MAKES THAT MAY WELL GO TO THE MERITS OF

18 THE PLAINTIFFS' CASE; HOWEVER, THEY DID NOT APPEAR TO ME TO CUT

19 AGAINST A CLASS ACTION.

20         WHAT THE ARGUMENTS SEEM TO SAY, FOR EXAMPLE, IN ONE

21 INSTANCE AS TO THE REASONABLE EXPECTATION OF THOSE CONTRACTING,

22 THE DEFENDANT HAD THE ARGUMENT THAT THERE WAS A SURVEY AND

23 NOBODY HAD ANY EXPECTATIONS.  WELL, IF NO ONE HAD THEM, THAT'S

24 THE CLASS NOT HAVING THEM, AND THAT MAY BE A PROBLEM THE CLASS

25 HAS, BUT EVERYBODY WOULD BE IN THE SAME POSITION.  AND SO

1   THAT'S WHY I JUST WANT TO BE SURE EVERYONE IS CLEAR I'M NOT

2   MAKING ANY RULING ON THE MERITS OF THE PLAINTIFFS' CASE.

3   NOBODY ASKED ME TO DO THAT FIRST.  ON OCCASION THEY DO.  THAT

4   WAS NOT DONE HERE.

5          SO, WHAT WE'RE DEALING WITH, AS BEST AS I CAN TELL,

6   IS WHAT WOULD BE AN OBJECTIVE-LEVEL ANALYSIS OF WHAT WOULD HAVE

7   BEEN REASONABLE FOR THE PARTIES TO THIS CONTRACT TO HAVE

8   EXPECTED.  WE ARE DEALING SOLELY WITH A QUESTION OF BREACH OF

9   THE COVENANT OF GOOD FAITH AND FAIR DEALING.

10          YOU HAVE AN EXPRESS PROVISION THAT COULD BE READ AS:

11   WE CAN DO ANYTHING WE WANT WHENEVER WE WANT.  THEN THAT COULD

12   BE READ IN THE CONTEXT OF A VARIETY OF THINGS, INCLUDING SOME

13   CASE LAW, THOUGH NOT NECESSARILY DIRECTLY ON POINT, THAT

14   REQUIRES THE PARTIES WHEN EXERCISING DISCRETION TO DO IT IN

15   GOOD FAITH AND ARGUABLY IN A WAY THAT WOULDN'T BE TOTALLY OUT

16   OF THE EXPECTATIONS OF THE OTHER SIDE.

17          SO, WE'VE GOT THE RULE 23 PRINCIPLES IN SUBSECTION A.

18   THERE HAVE TO BE COMMON QUESTIONS.  AND B, THEY HAVE TO

19   PREDOMINATE.

20          WELL, I THINK THE DEFENDANT IS ARGUING THEY DON'T

21   PREDOMINATE BASED PRIMARILY, IT SOUNDS TO ME, ON THE ARGUMENT

22   THAT WHATEVER EXPECTATIONS ANY OF THE CARD MEMBERS MIGHT HAVE

23   WOULD BE BASED ON WHATEVER SOLICITATION WAS SENT TO THEM AND

24   THAT THERE WERE MANY DIFFERENT SOLICITATIONS SENT.  THAT MIGHT

25   BE THE CASE.  BUT NO SIGNIFICANT DIFFERENCES HAVE BEEN POINTED

1   OUT TO THE COURT IN THOSE SOLICITATIONS, SO EVEN IF THEY

2   DIFFERED, IF THEY WEREN'T MATERIALLY DIFFERENT, I'M NOT SURE

3   HOW THAT WOULD AFFECT THE ANALYSIS.

4        SO MAYBE I'LL JUST GO THROUGH AND LOOK AT SOME OF THE

5   QUESTIONS THAT I MIGHT POSE TO YOU.  I'M ASSUMING NONE OF YOU

6   HAVE ANY AUTHORITY THAT BEARS ON THE LAST CASE YOU HAD TO

7   LISTEN TO FOR 45 MINUTES, BUT IF DO YOU, FEEL FREE TO PRESENT

8   IT.  OKAY.  LET ME JUST SEE WHERE I HAVE THEM.

9        OKAY.  MAYBE I SHOULD JUST START WITH:  CAN CHASE

10  POINT OUT ANY MATERIAL DIFFERENCES IN THE OFFERS OR

11  SOLICITATIONS THAT WERE MADE TO THE CARDHOLDERS TO USE THE

12  CHECKS THAT THEY HAD PROVIDED?

13       **MS. STRICKLAND:**  WELL, YOUR HONOR, LET ME RESPOND

14  DIRECTLY TO THAT QUESTION, BUT LET ME FIRST NOTE THAT IS NOT

15  THE ONLY ISSUE THAT WE VIEW AS DEFEATING PREDOMINANCE AND

16  COMMONALITY.  LET'S JUST USE PREDOMINANCE.

17       **THE COURT:**  OKAY.

18       **MS. STRICKLAND:**  BECAUSE IT'S THE MORE ENCOMPASSING

19  CONCEPT.  OBVIOUSLY, IF WE DEFEAT PREDOMINANCE, WE DEFEATED

20  COMMONALITY AS WELL.

21       THAT IS NOT THE ONLY ISSUE.  IT IS CERTAINLY AN

22  ISSUE.

23       I THINK IT WOULD BE USEFUL TO GO BACK TO ACTUAL

24  STANDARD, BECAUSE WE WOULD DISAGREE WITH YOUR HONOR, AND I

25  DON'T THINK THAT DELAWARE LAW HOLDS THAT THE STANDARD HERE IS

1   ON OBJECTIVE STANDARD.

2           THE CASE THAT OBVIOUSLY IS CONTROLLING HERE IS THE

3   *NEMEC* CASE, AND *NEMEC* VERY CLEARLY LAYS OUT THE STANDARD WHICH

4   IS PROBABLY SUBJECTIVE AND OBJECTIVE.  THE STANDARD IS THAT THE

5   COURT WILL NOT IMPLY CONTRACT TERMS WHEN THE PARTY ASSERTING

6   THE IMPLIED COVENANT PROVES THAT THE OTHER PARTY -- WELL, WILL

7   IMPLY.  LET ME NOT PUT A DOUBLE NEGATIVE HERE.

8           BUT YOU CAN ONLY HAVE AN IMPLIED COVENANT CLAIM WHERE

9   YOU PROVE THAT THE OTHER PARTY HAS ACTED ARBITRARILY OR

10  UNREASONABLY, THEREBY FRUSTRATING THE FRUITS OF THE BARGAIN

11  THAT -- AND THIS IS THE CRITICAL QUESTION -- THE ASSERTING

12  PARTY REASONABLY ANTICIPATED.

13          I BELIEVE WHAT YOUR HONOR SAID, THIS IS AN OBJECTIVE

14  STANDARD, WELL, WE WOULD CONTEND THAT IT'S NOT.  THERE'S NO

15  DELAWARE CASE LAW THAT SAYS THE STANDARD FOR DETERMINING

16  WHETHER EXPECTATIONS WERE REASONABLE IS OBJECTIVE, AND WE WOULD

17  ARGUE THAT, ACTUALLY, THERE ARE TWO COMPONENTS.

18          HAVING THE EXPECTATION IN THE FIRST INSTANCE IS

19  ACTUALLY SUBJECTIVE.  DID YOU HAVE IT OR DIDN'T YOU HAVE IT?

20  AND THAT'S WHERE PLAINTIFFS HAVE NOT MET THEIR BURDEN OF PROOF.

21          WHETHER THE EXPECTATION WAS REASONABLE MAY BE AN

22  OBJECTIVE STANDARD, BUT THE HURDLE THAT THE PLAINTIFFS HAVE

23  FAILED TO SATISFY HERE IS WHETHER THEIR CLASS HAD AN

24  EXPECTATION AT ALL, AND WE CAN GET INTO THAT, BUT WE WOULD

25  SUBMIT THAT THEY HAVE NOT MET THEIR BURDEN, AND ONE OF THE

1  THINGS THAT OBVIOUSLY IS CRITICAL TO REMEMBER HERE IS THAT THE

2  BURDEN IS ON THEM.

3       WE HAVE SUBMITTED A LOT OF EVIDENCE.  A MARKET

4  SURVEY, DEPOSITION TESTIMONY FROM THE PLAINTIFFS.  NOTABLY,

5  THEY HAVE NOT MET THAT EVIDENCE WITH EVIDENCE OF THEIR OWN.

6  WHAT THEY'VE DONE IS TAKEN POTSHOTS AT WHAT WE'VE SUBMITTED.

7  BUT THERE'S A REAL QUESTION AS TO WHETHER THEY'VE MET THEIR

8  BURDEN UNDER *HYDROGEN PEROXIDE* AND *IPO*.  THERE IS NO

9  PREPONDERANCE OF THE EVIDENCE HERE IN THEIR FAVOR.

10       SO WITH THAT, LET ME JUST SAY, RESPONDING TO THE

11  COURT'S QUESTION ON THE MATERIAL DIFFERENCES, AGAIN, ONE OF THE

12  ISSUES, NOT THE ONLY ISSUE, DEFEATING PREDOMINANCE -- I'M HAPPY

13  TO LIST OFF THE ISSUES, WHICH I CONVENIENTLY MADE YOUR HONOR A

14  LIST BECAUSE I THOUGHT THIS WOULD COME UP.

15       **THE COURT:**  I DON'T SAY -- LET ME PUT IT THIS WAY:

16  IT WOULD HELP IF YOU GAVE ME THE LIST BEFORE.

17       **MS. STRICKLAND:**  THE LIST IS ACTUALLY IN OUR PAPERS.

18       **THE COURT:**  EXCUSE ME.  WHERE?

19       **MS. STRICKLAND:**  IT IS AT PAGE -- I WILL TELL YOU.

20  IN OUR BRIEF -- WE ACTUALLY COMPILED THE LIST FOR THIS EXACT

21  REASON --

22       **THE COURT:**  WHAT DO YOU MEAN BY "THE LIST"?  PERHAPS

23  I AM --

24       **MS. STRICKLAND:**  I'M SORRY.  YOU AND I MAY BE

25  SPEAKING OF DIFFERENT LISTS.  THE LIST I'M SPEAKING OF IS THE

1   NON-PREDOMINANT ISSUES.  THE LIST OF THE VARIATIONS IN THE

2   SOLICITATIONS I WILL --

3            **THE COURT:**  IS THAT ACTUALLY --

4            **MS. STRICKLAND:**  THAT IS NOT LISTED.  WE'VE PROVIDED

5   THE COURT WITH THE SOLICITATIONS.

6            **THE COURT:**  RIGHT.  I LOOKED AT THEM, AND I WAS

7   HAVING TROUBLE SEEING MATERIAL DIFFERENCES.

8            **MS. STRICKLAND:**  LET ME ADDRESS THAT.

9            **THE COURT:**  I THOUGHT MAYBE YOU COULD -- EXCUSE ME.

10  WE CAN'T BOTH TALK AT THE SAME TIME.

11           **MS. STRICKLAND:**  I APOLOGIZE.

12           **THE COURT:**  I KNOW YOU ARE VERY CHARGED UP HERE,

13  READY TO GO, BUT NONETHELESS...

14          ALL RIGHT.  NOW, IF THERE ARE MATERIAL DIFFERENCES

15  BETWEEN THESE VARIOUS SOLICITATIONS, THAT WOULD HAVE BEEN NICE

16  TO HAVE IN ADVANCE OF THE HEARING, BUT IF YOU HAVE IT NOW, YOU

17  COULD POINT ME TO THEM, I SUPPOSE.

18           **MS. STRICKLAND:**  I WILL DO THAT, YOUR HONOR.

19           **THE COURT:**  OKAY.

20           **MS. STRICKLAND:**  THANK YOU.

21          LET ME START BY SAYING THAT, NOTABLY, THE

22  SOLICITATION THAT IS ATTACHED TO THE COMPLAINT, AND ON WHICH

23  PLAINTIFFS BASE THEIR CASE, AND ON WHICH THEIR PURPORTED EXPERT

24  RELIES, IS A SOLICITATION, AND THIS IS IN THE RECORD, THAT WAS

25  ONLY SENT TO ONE OF THE PUTATIVE NAMED PLAINTIFFS HERE.  SO IF

1  NINE OUT OF TEN NEVER RECEIVED THAT SOLICITATION, TEN OUT OF

2  TEN NEVER LOOKED AT THE SOLICITATION.

3            THE COURT:  "SO WHAT," I THINK IS THE QUESTION.

4            MS. STRICKLAND:  WELL, WELL, SO WHAT --

5            THE COURT:  YES.

6            MS. STRICKLAND:  -- IS IT'S DIFFICULT TO HAVE A

7  REASONABLE EXPECTATION BASED ON SOMETHING YOU NEVER LOOKED AT.

8            THE COURT:  WELL, THE PLAINTIFFS HAVE PUT IN EVIDENCE

9  THAT THERE HAVE BEEN MULTIPLE SOLICITATIONS, THAT SOMEBODY SAID

10 THEY WERE -- WHATEVER THEY WERE SHOWN WAS TYPICAL OF WHAT

11 PEOPLE RECEIVED, THAT THEY'VE GONE FORWARD TO MAKE A PRIMA

12 FACIE SHOWING THAT, ESSENTIALLY, ALL THE PLAINTIFFS GOT

13 SOMETHING THAT WAS THE SAME FOR ALL LEGAL PURPOSES.

14            IF YOU FELT THAT THEY WERE NOT SUFFICIENTLY THE SAME

15 AND WOULD GIVE RISE EITHER TO AN OBJECTIVE OR SUBJECTIVE

16 DIFFERENCE OF VIEWPOINT, THEN I THOUGHT THAT SHIFTED THE

17 BURDEN, ESSENTIALLY, TO THE DEFENDANT AFTER THEIR INITIAL

18 SHOWING TO SAY:  NO, NO, YOU'RE WRONG, THERE ARE MATERIAL

19 DIFFERENCES.

20            NOW, IF YOUR POINT IS IT DOESN'T MATTER BECAUSE WE'RE

21 GOING TO LOOK AT THE IDIOSYNCRATIC STATE OF MIND OF EACH OF THE

22 CARDHOLDERS, AND THAT'S THE LAW, THAT'S A DIFFERENT ARGUMENT.

23 THAT'S 20 PEOPLE LOOKING AT THE SAME THING AND COMING UP WITH

24 DIFFERENT THOUGHTS.

25            IF THE LAW ACTUALLY DOES LOOK AT THEIR INDIVIDUAL

1  STATES OF MIND, AND THAT'S RELATIVELY RARE IN CONSUMER

2  ACTIONS -- IT MAY WELL BE THE CASE IN AN INDIVIDUAL MATTER,

3  BUT -- IT COULD BE THE CASE, BUT IF THAT IS THE ARGUMENT, THEN

4  THE ARGUMENT IS IT DOESN'T MATTER WHETHER THEY'RE ALL THE SAME

5  BECAUSE PEOPLE ARE DIFFERENT.  OKAY?

6           **MS. STRICKLAND:**  YOUR HONOR --

7           **THE COURT:**  YOUR ARGUMENT IS THAT ESSENTIALLY PEOPLE

8  ARE TREATED THE SAME, AND THEN THE ONLY DIFFERENCE IS DO THEY

9  GET SOMETHING DIFFERENT.

10          **MS. STRICKLAND:**  AND, YOUR HONOR, THEY DID, IN FACT,

11 GET SOMETHING DIFFERENT.  AND IN THE O'DONNELL DECLARATION

12 WHICH WE DID SUBMIT WITH OUR OPPOSITION, WE HAVE PROVIDED THE

13 COURT WITH A NUMBER OF SAMPLES OF THE DIFFERENT KINDS OF

14 OFFERS.  WE SUBMITTED TEN TO YOUR HONOR.  THERE ARE OTHERS.

15          **THE COURT:**  I LOOKED AT THEM.  THEY LOOKED TO BE NOT

16 MATERIALLY DIFFERENT.  THAT'S THE POINT.  SO IF YOU THINK THAT

17 THEY ARE DIFFERENT, OTHER THAN THEY START WITH "DEAR MADAM" OR

18 "DEAR SIR," OR THE PARAGRAPHS ARE IN DIFFERENT ORDER OR

19 SOMETHING THAT SAID -- I MEAN, THEY'RE TELLING EVERYONE THAT

20 THESE ARE THE GREATEST THINGS SINCE SLICED BREAD.  THEY'RE NOT.

21 WHEN I GET THEM, I TEAR THEM UP AND THROW THEM AWAY -- OKAY? --

22 BECAUSE IT'S NOT SOMETHING I WANT TO GET INVOLVED IN TAKING

23 LOANS FROM A CREDIT CARD COMPANY.  BUT A LOT OF PEOPLE USE THEM

24 FOR VARIOUS THINGS.  AND, AS YOUR CLIENT POINTED OUT, IF YOU'VE

25 GOT A HIGHER INTEREST RATE SOMEWHERE ELSE, THIS WOULD BE A GOOD

1  WAY TO PAY IT OFF AND ESSENTIALLY REFINANCE THAT LOAN.  THAT

2  MAY WORK.  I HAVEN'T EVER TRIED TO DO THAT.

3          BUT, ANYWAY, SO I THINK THE QUESTION REALLY IS:  IF

4  THEY GOT, FOR ALL INTENTS AND PURPOSES, THE SAME PITCH.  ALL

5  RIGHT?  IT'S THE HOLIDAYS.  IT'S A GOOD WAY TO BE ABLE TO BUY

6  CHRISTMAS GIFTS FOR EVERYONE.  OR, IF YOU'VE GOT A BIG LOAN,

7  YOU COULD PAY IT OFF BECAUSE THIS IS A GREAT INTEREST RATE.

8  ALL OF THOSE THINGS MAY BE FINE, BUT IF THAT'S WHAT THEY TOLD

9  THEM, WHAT IS IN THAT SOLICITATION REALLY HAS VERY LITTLE TO DO

10 WITH WHAT WE'RE TALKING ABOUT HERE, BECAUSE WHAT WE'RE TALKING

11 ABOUT HERE IS CHASE'S RESERVATION OF A RIGHT TO CHANGE THE

12 PERCENTAGE OF THE OUTSTANDING BALANCE THAT HAS TO BE PAID OFF

13 IN ANY GIVEN MONTH, RIGHT?

14         **MS. STRICKLAND:**  WELL, YOUR HONOR, YOU --

15         **THE COURT:**  THAT'S NOT THERE.  THAT'S IN THE CARD

16 MEMBER AGREEMENT.

17         **MS. STRICKLAND:**  WELL, THERE ARE A LOT OF QUESTIONS

18 AND COMMENTS EMBEDDED IN WHAT YOUR HONOR JUST SAID.  LET ME TRY

19 TO TACKLE THEM ONE BY ONE.

20         **THE COURT:**  OKAY.

21         **MS. STRICKLAND:**  WITH RESPECT TO WHAT ARE WE LOOKING

22 AT HERE, YOUR HONOR HAS ALREADY RULED THAT CHASE HAD THE RIGHT

23 UNDER THE CHANGE OF TERMS.  SO, I WOULD SUBMIT THAT THAT'S

24 ACTUALLY NOT WHAT WE'RE LOOKING AT HERE.  WHAT WE'RE LOOKING AT

25 NOW IS THIS NOTION OF A BREACH OF AN IMPLIED COVENANT WHICH

1    TURNS ON CONSUMER EXPECTATIONS, WHICH THEN GOES BACK TO HOW ARE

2    THOSE EXPECTATIONS FORMED, WHICH THE PLAINTIFFS ALLEGE IN THEIR

3    OWN COMPLAINT WAS BASED ON THE SOLICITATIONS, AND SPECIFICALLY

4    THE FORM OF SOLICITATION THEY APPENDED AS AN EXHIBIT.  SO I

5    DON'T ACTUALLY THINK WE'RE HERE TODAY TALKING ABOUT AN --

6    EXPECTATIONS FORMED FROM A CHANGE IN TERMS NOTICE.

7              YOUR HONOR HAS ALREADY SAID YOU HAD THE RIGHT TO

8    CHANGE TERMS AS A CONTRACTUAL MATTER.  BUT THE QUESTION IS:

9    DID YOU HAVE A RIGHT TO CHANGE TERMS AS A BREACH OF THE IMPLIED

10   COVENANT AND GOOD FAITH MATTER?

11             **THE COURT:**  YES.  RIGHT.

12             **MS. STRICKLAND:**  SO WE'RE NOT HERE ON THAT PIECE OF

13   THE CONTRACT TODAY.  WE'RE HERE ON WHAT IS THE TEST FOR THE

14   BREACH OF THE IMPLIED COVENANT CLAIM UNDER DELAWARE LAW AND CAN

15   THAT CLAIM BE CERTIFIED, WHICH TURNS ON CONSUMER EXPECTATIONS,

16   WHICH GOES BACK TO WHAT'S THE DIFFERENCES WHICH I'M HAPPY TO

17   ADDRESS.

18             **THE COURT:**  OKAY.  THE SOLICITATION INCORPORATES BY

19   REFERENCE THE CARD MEMBER AGREEMENT, RIGHT?

20             **MS. STRICKLAND:**  CORRECT.

21             **THE COURT:**  AND WHAT THE CARD MEMBER AGREEMENT SAYS

22   IS:  WE CAN CHANGE THE TERMS.  AND THE TERM THAT WAS CHANGED

23   HERE WAS THE PERCENTAGE OF THE OUTSTANDING BALANCE THAT HAD TO

24   BE PAID OFF.  AND TO THE EXTENT THAT SOMEONE GOT ONE OF THESE

25   SOLICITATIONS, HOW DID THAT BEAR ON HOW THEY WOULD VIEW THAT

1  INCORPORATION AND HOW IT WOULD BE EXERCISED, SO TO SPEAK.

2          LET'S ASSUME FOR A MOMENT, BECAUSE NOBODY'S YET DONE

3  IT, THAT THERE ARE NO MATERIAL DIFFERENCES IN THE

4  SOLICITATIONS, THEN WE WOULD BE BACK TO THE QUESTION OF WHAT

5  YOU INTERPRET DELAWARE LAW TO BE, WHICH IS A FOCUS ON THE

6  INDIVIDUAL STATE OF MIND OF EACH CARD MEMBER WHO RECEIVED A

7  SATISFIED SOLICITATION AND WHAT THEY THOUGHT.  IF THAT'S

8  CORRECT, IF YOU ARE CORRECT, THEN YOU WOULD HAVE MILLIONS OF

9  DIFFERENT STATES OF MIND, AND THAT WOULD BE A VERY HARD CLASS

10 TO CERTIFY.  THERE IS NO QUESTION ABOUT IT.

11         IF THAT STARTING PREMISE IS NOT CORRECT, THEN WE'RE

12 REALLY LOOKING AT EVERYONE GETTING PRETTY MUCH THE SAME THING,

13 AND THEN YOU START FOCUSING ON BUT YOUR DAMAGES ARE DIFFERENT.

14 I DON'T KNOW.  OKAY.  SO I REALLY THINK THAT THE ISSUE IS THE

15 RELEVANCE OF THE CASE THAT YOU'VE CITED TO THIS PARTICULAR

16 ACTION.

17         MAYBE I OUGHT TO HEAR FROM MS. CABRASER TO SEE WHAT

18 SHE SAYS ABOUT THAT, OR WHOEVER IS GOING TO ARGUE THAT POINT.

19         **MS. STRICKLAND:**  MAY I JUST RESPOND TO YOUR POINT

20 ABOUT THE OBJECTIVE STANDARD?  YOUR HONOR, WE WOULD SUBMIT THAT

21 WE PREVAIL EVEN IF THE STANDARD WERE OBJECTIVE, BECAUSE HOW DO

22 YOU GO ABOUT DETERMINING WHAT AN OBJECTIVE EXPECTATION IS?

23         THE ANSWER IS:  YOU GO OUT AND YOU TALK TO A BUNCH OF

24 PEOPLE AND SEE IF THERE'S SOME COMMON GROUND THERE TO COME UP

25 WITH WHAT'S REASONABLE.  THIS IS EXACTLY THE POINT OF CLASS

1 CERTIFICATION JURISPRUDENCE, WHICH IS THE PLAINTIFFS HAVE TO

2 STEP FORWARD AND SAY HOW ARE THEY GOING TO PROVE THAT THERE IS

3 A SHARED POINT OF VIEW AMONG THEIR CLASS.

4          **THE COURT:**  LET ME STOP YOU FOR A MOMENT.

5          ORDINARILY, CONTRACT INTERPRETATION IS A MATTER OF

6 LAW AS TO WHAT WOULD BE A REASONABLE EXPECTATION OF THE

7 PARTICIPANTS OR THE PARTIES TO THE AGREEMENT BASED ON WHAT IS

8 EXPRESSED, NOT WHAT IS HARBORED SILENTLY IN SOMEONE'S STATE OF

9 MIND, AND THERE ARE VARIOUS WAYS THAT THAT CAN BE APPROACHED:

10 WHAT WERE THE NEGOTIATIONS?  WELL, OF COURSE, WE DON'T HAVE ANY

11 NEGOTIATIONS HERE.  WHAT WAS SAID AT THE TIME BETWEEN THE

12 PARTIES?  WHAT WE HAVE IS THE SOLICITATION LETTER AND THE CARD

13 MEMBER AGREEMENT.

14          I DON'T KNOW WHETHER ANY OF THESE SURVEYS ARE

15 TERRIBLY RELEVANT TO THE ISSUE IF ONE IS LOOKING, ESSENTIALLY,

16 AT THE TRADITIONAL CONTRACT ANALYSIS OR METHOD OF CONSTRUING A

17 CONTRACT.  BUT THERE ARE THINGS IN ANY GIVEN INDUSTRY OR

18 SITUATION THAT MAY NOT BE SOMETHING THE COURT WOULD KNOW ABOUT.

19          MAYBE I'LL JUST SORT OF SEGUE INTO THIS QUESTION, THE

20 EXPERTISE OF PLAINTIFFS' EXPERT.  YOU ARE OBJECTING TO THE WAY

21 HE DID HIS STUDY AND EVERYTHING ELSE.

22          EVEN A CONTRACT THAT'S PATENTLY CLEAR ON ITS FACE MAY

23 BE SHOWN TO BE AMBIGUOUS IF SOMEBODY CAN SHOW THAT THE WAY A

24 PARTICULAR INDUSTRY WORKS, THINGS ARE READ OR CONSIDERED IN A

25 DIFFERENT WAY THAN A LAY PERSON MIGHT READ OR CONSIDER THEM.

1          THERE ARE THINGS HERE ABOUT THE WAY THE BANKING

2     INDUSTRY WORKS THAT ARE BEING RELIED ON BY THE PLAINTIFF, AND

3     THEN STATING THAT THE REASONABLE CONSUMER WOULD ASSUME THESE

4     THINGS EITHER -- I GUESS CONSCIOUSLY OR SUBCONSCIOUSLY, HOWEVER

5     YOU WANT TO PUT THAT.  IF ALL THE INTEREST RATES ARE GOING UP

6     AND DOWN AT THE SAME LEVEL BASED ON SOME ECONOMIC PRINCIPLE,

7     THAT MIGHT BE SOMETHING SOMEONE MIGHT HAVE IN THEIR MIND OR

8     JUST HAVE ABSORBED FROM THEIR EXPERIENCE IN THE WORLD.

9          THERE ARE A LOT OF DIFFERENT THINGS THAT SOMEBODY

10    COULD PUT IN AS TO HOW THE INDUSTRY WORKS, BUT NOT NECESSARILY

11    BE ABLE TO DRAW A CONCLUSION AS AN EXPERT.  IN OTHER WORDS, YOU

12    MIGHT STILL THEN GET DOWN TO WHAT WOULD A LAY PERSON WOULD DO

13    WITH THAT INFORMATION AND IN DRAWING A LAY OPINION.

14         I'M NOT SURE ALL WHERE THAT WOULD PLAY OUT, BUT IT

15    MAY BE NOBODY HAS ANY EXPECTATION.  IT'S PERFECTLY FINE TO JUST

16    CHANGE THESE THINGS AS ONE WISHES.  OR IT MAY BE THAT THERE ARE

17    SOME REASONABLE LIMITATIONS ON IT.  THAT WOULD BE SOMETHING THE

18    PLAINTIFF WOULD HAVE TO SHOW.

19         BUT IT SOUNDS, AT LEAST IN THE FIRST INSTANCE, TO ME,

20    LIKE THIS IS GOING TO BE SHOWN ON BEHALF OF A CLASS WHO'S

21    EITHER GOING TO RISE OR FALL AS A GROUP UNLESS YOU'RE RIGHT

22    ABOUT HAVING TO LOOK AT THE INDIVIDUAL'S STATES OF MIND OF THE

23    PARTIES TO THIS AGREEMENT.  AND IF YOU'RE RIGHT, THAT'S THE END

24    OF IT.  BUT IF THAT ISN'T CONTROLLING CASE LAW, THEN IT WOULD

25    SEEM TO ME THAT YOU WOULD BE LOOKING AT THE CLASS'S OBJECTIVELY

1  REASONABLE INTERPRETATION OF SIMILAR SOLICITATIONS IN

2  CONNECTION WITH THE CARD MEMBER AGREEMENT.  MAYBE I'M WRONG

3  ABOUT --

4        **MS. STRICKLAND:**  YOUR HONOR, MAY I, JUST TO MAKE SURE

5  I RESPOND TO YOUR FIRST QUESTION, DEAL WITH THE ISSUE AND IN

6  THE DIFFERENCES BETWEEN THE OFFERS?  THOSE OFFERS ARE ATTACHED

7  AS EXHIBIT B-1 THROUGH TEN TO MR.--

8        **THE COURT:**  I LOOKED AT THEM.

9        **MS. STRICKLAND:**  MAY I POINT OUT THE DIFFERENCES?

10        **THE COURT:**  I COULD HAVE USED A MAGNIFYING GLASS FOR

11  SOME OF THE TEXT.  BUT ALL RIGHT.

12        **MS. STRICKLAND:**  THAT IS THE PROBLEM OF COPYING FROM

13  OLD MICROFICHE AND THE LIKE.  THEY ARE MUCH BIGGER WHEN YOU GET

14  THEM IN REAL LIFE.

15        SOME OF THE OFFERS CONTAIN THE LANGUAGE, QUOTE, "GIVE

16  YOURSELF SOME BREATHING ROOM."  THAT'S SOMETHING ONLY ONE OF

17  THE NAMED PLAINTIFFS HERE RECEIVED, AND SHE DID NOT THINK IT

18  WAS MATERIAL TO HER DECISION MAKING.

19        SOME OF THE OFFERS DIFFER DRAMATICALLY IN TERMS OF

20  WHAT THEY PROPOSE THAT THE MONEY BE USED FOR.  AND THIS REALLY

21  GOES TO THE HEART OF PLAINTIFFS' CASE, BECAUSE PLAINTIFFS'

22  THEORY IS THAT THIS IS LIKE A HOME EQUITY LOAN, OR AUTO LOAN,

23  WHERE YOU THINK YOU ARE GOING TO HAVE IT FOR A VERY, VERY LONG

24  TIME.

25        WELL, LET ME TELL YOU SOME OF THE THINGS THAT ARE

1 PROPOSED THAT VARY FROM OFFER TO OFFER.  FOR EXAMPLE --

2      **THE COURT:**  OKAY.  WAIT A MINUTE.  WHY DIDN'T YOU

3 TELL ME THIS EARLIER, INSTEAD OF TELLING ME IN THE FIRST

4 INSTANCE?  IT WOULD HAVE HELPED FOR ME TO HAVE LOOKED AT THIS

5 IN ADVANCE.  IT SEEMS LIKE IT WAS AN ISSUE YOU KNEW ABOUT

6 BECAUSE YOU SAID:  LOOK AT ALL THESE OFFERS.

7      SO I LOOKED AT THEM.  I SAID, YEAH, OKAY, THEY LOOK

8 PRETTY MUCH THE SAME.  NOW YOU ARE GOING TO POINT OUT WHERE

9 THEY'RE DIFFERENT, SO I'M GOING TO HAVE TO GET THEM OUT, PUT

10 THEM ALL IN FRONT OF ME, TRY AND FIND WHERE ALL THESE

11 DIFFERENCES ARE.  NOW, ONE YOU'RE SAYING, "GIVE YOURSELF SOME

12 BREATHING ROOM," DO YOU THINK THAT'S SIGNIFICANT?  APPARENTLY,

13 YOU SAY THE CARD MEMBER DIDN'T THINK THAT WAS IMPORTANT TO

14 THEM.

15      **MS. STRICKLAND:**  YOUR HONOR, PLAINTIFFS THINK IT'S

16 VERY IMPORTANT.  THAT'S WHAT THEIR CASE IS ALL ABOUT, IS THAT

17 THIS SOMEHOW SUGGESTS THIS LOAN COULD BE OUTSTANDING FOREVER.

18 SO PLAINTIFFS APPARENTLY THINK IT'S IMPORTANT.  OKAY?

19      IN B-2 -- AND I'M TALKING ABOUT THE DIFFERENT USES

20 THAT ARE PROPOSED.  I MEAN, PLAINTIFFS HERE, THE CENTERPIECE OF

21 THEIR CASE IS THAT THIS WAS JUST LIKE A HOME IMPROVEMENT LOAN

22 OR A VERY LONG-TERM LOAN.  BUT THAT'S NOT ACTUALLY WHAT THESE

23 OFFERS SAY.  IN FACT, ONLY ABOUT --

24      **THE COURT:**  THAT GOES TO THE MERITS OF WHETHER

25 THEY'VE GOT A GOOD CLAIM OR NOT.

1          **MS. STRICKLAND:**  IT GOES TO THE DIFFERENCES IN THE

2  SOLICITATIONS.

3          **THE COURT:**  WELL, YOU HAVE NOT POINTED THOSE OUT.

4  YOU'VE POINTED OUT ONE PHRASE WHICH YOU SAY, "GIVE YOURSELF

5  SOME BREATHING ROOM," IS IN ONE SOLICITATION WHICH YOU THEN SAY

6  THE PLAINTIFFS ARE RELYING ON, BUT ONLY ONE PLAINTIFF GOT IT,

7  AND THEY DIDN'T THINK IT WAS IMPORTANT.  NOW, WHETHER THEY

8  THOUGHT IT WAS IMPORTANT OR NOT GOES TO THE MERITS.  ALL RIGHT?

9          IF THE PLAINTIFFS' COUNSEL IS ASSERTING IT'S

10  IMPORTANT AND IT'S ONLY IN ONE AGREEMENT, THAT MIGHT BE A

11  PROBLEM.  I CAN ASK MS. CABRASER ABOUT THEM.

12          **MS. STRICKLAND:**  IN B-2, WHICH IS ONE OF THE

13  SOLICITATIONS THAT IS IN THE RECORD, O'DONNELL B-2 --

14          **THE COURT:**  OKAY.

15          **MS. STRICKLAND:**  AGAIN, I'M GOING TO THE POINT OF

16  DIFFERENCES.  THAT SOLICITATION REFERS TO FLEXIBILITY WHEN YOU

17  MANAGE YOUR FINANCES.  B-3 REFERS TO BUYING A NEW COMPUTER.

18  AND THAT -- WHO EXPECTS TO PAY A LOAN FOR 20 YEARS TO BUY A

19  COMPUTER?

20          B-4 -- B-3 ALSO TALKS ABOUT BUYING NEW FURNITURE.

21  B-4 TALKS ABOUT REVAMPING YOUR WARDROBE.  AGAIN --

22          **THE COURT:**  LET ME SEE IF I'VE GOT YOUR POINT,

23  THOUGH.  ALL RIGHT?

24          YOU'VE NOW CATALOGED THEY'VE USED DIFFERENT TYPES OF

25  EXAMPLES OF THINGS YOU COULD BUY WITH THE CHECKS.  OKAY.  AND

```
1   THEN YOU WOULD DRAW FROM THAT WHAT CONCLUSION WITH RESPECT TO

2   THE CLASS AS DIFFERENCES, AS OPPOSED TO -- EACH TIME I THINK

3   YOU'RE SAYING, WELL, WHY WOULD ANYBODY THINK THIS WAS LONG

4   TERM, THESE ARE ALL SHORT-TERM PURCHASES.  BUT THEN, AGAIN,

5   THAT'S THE PLAINTIFFS' POINT:  WE'RE ALL IN THE SAME BOAT.  YOU

6   SAY IT'S A LEAKY ONE, AND THAT'S ON THE MERITS.

7           MS. STRICKLAND:  BUT ONLY FOUR OF THEM ACTUALLY

8   PROVIDE FOR HOME IMPROVEMENTS, WHICH IS WHAT THEIR CASE IS

9   ABOUT, WHICH, ARGUABLY, IS A DIFFERENT CREATURE, AND CERTAINLY

10  PLAINTIFFS THINK IT'S A DIFFERENT CREATURE.  THEY DIDN'T --

11  THIS CASE FOR THEM DOESN'T TURN ON WHETHER YOU ARE SOLICITED TO

12  BUY A NEW COMPUTER AND TAKE OUT A LOAN, OR BUY A NEW WARDROBE,

13  WHICH CERTAINLY IS NOT A LONG-TERM PROPOSITION.

14          THEIR CASE TURNS ON HOME IMPROVEMENTS.  FOUR OF THE

15  TEN SAMPLES HAD THAT IN WHAT WE GAVE YOUR HONOR.  SIX OF THEM

16  DO NOT.  SIX OF THEM ARE MORE MUCH SHORT-TERM FOCUS AND THE

17  LIKE.  THAT IS A MATERIAL DIFFERENCE BETWEEN THE OFFERS.

18          THE COURT:  ALL RIGHT.  SO YOU DIDN'T ARGUE THAT

19  BEFORE, BUT WHAT YOU'RE ARGUING NOW IS THAT THE PLAINTIFFS ARE

20  TAKING A PARTICULAR POSITION.  I HAVE TO ASK THEM IF THEY ARE

21  AND WHERE THAT'S REFLECTED.  IF YOU KNOW WHERE IT'S REFLECTED,

22  YOU CAN SHOW ME AS WELL, THAT THE EXPECTATION OF THE CLASS IS

23  THAT THESE WILL BE THINGS THAT HAVE TO BE PAID OFF OVER A LONG

24  PERIOD OF TIME?  IS THAT RIGHT?

25          MS. STRICKLAND:  THAT'S THEIR ALLEGATION.
```

1    **THE COURT:**  ALL RIGHT.  I'LL FIND OUT HOW THAT THEN

2    JUXTAPOSES WITH WHAT YOU'VE POINTED OUT TO BE A SOLICITATION

3    THAT EMPHASIZES SMALLER PURCHASES THAT WOULD BE PAID OFF MORE

4    QUICKLY.

5    **MS. STRICKLAND:**  RIGHT.  AND YOUR HONOR --

6    **THE COURT:**  ALL RIGHT.

7    **MS. STRICKLAND:**  WE THINK THE *THOROGOOD* CASE --

8    THERE'S NOT A LOT OF CIRCUIT CASE LAW THAT WE THINK IS

9    PARTICULARLY ON POINT HERE.  THERE'S CERTAINLY CIRCUIT CASE LAW

10   THAT PROVIDES GUIDANCE.  BUT THE *THOROGOOD* CASE, WHICH IS A

11   2010 DECISION FROM THE SEVENTH CIRCUIT, CONTRARY TO THE WAY

12   PLAINTIFFS CHARACTERIZE THE CASE LAW, *THOROGOOD* ACTUALLY

13   INVOLVED, ESSENTIALLY, IDENTICAL REPRESENTATIONS, WHICH WE

14   DON'T EVEN THINK WE HAVE HERE, BUT ASSUMING THE COURT WERE TO

15   SAY SHORT TERM VERSUS LONG TERM, THESE AREN'T MATERIALLY

16   DIFFERENT, *THOROGOOD*, THE COURT CONCLUDED A CLASS COULDN'T BE

17   CERTIFIED, A CONSUMER CASE.

18   **THE COURT:**  TRUE.  ALL RIGHT.  WELL, WE CAN ASK

19   MS. CABRASER --

20   **MS. STRICKLAND:**  BECAUSE OF DIFFERING EXPECTATIONS.

21   **THE COURT:**  OKAY.  ON LABELS AND ADVERTISING, RIGHT?

22   **MS. STRICKLAND:**  LABELS AND ADVERTISING, BUT VERY

23   SIMILAR.  WE'RE DEALING HERE WITH, ESSENTIALLY, PROMOTIONAL

24   MATERIALS IS THE WAY PLAINTIFFS ARE NOW FRAMING THEIR

25   COMPLAINT.  WE WON ON THE CONTRACT ISSUE.

1          **THE COURT:**  AS I SAY, THE QUESTION NOW IS WHETHER

2   THAT PARTICULAR PROVISION WAS -- RIGHT WAS EXERCISED IN

3   ACCORDANCE WITH THE COVENANT.  BUT -- OKAY, NOW I UNDERSTAND

4   YOUR POINT.  THERE ARE SOME POINTS YOU MADE.  THOSE ARE GOOD

5   POINTS.  WE'LL SEE WHAT MS. CABRASER HAS TO SAY IN RESPONSE TO

6   THAT.

7          **MS. STRICKLAND:**  YOUR HONOR, I KNOW THAT WAS A LONG

8   RESPONSE TO A SHORT QUESTION, BUT I'LL RESERVE MY FURTHER

9   RESPONSES TO YOUR QUESTIONS.

10          **THE COURT:**  OKAY.  ALL RIGHT.  SOMEWHERE LONG AGO I

11   ASKED:  ARE THERE MATERIAL DIFFERENCES?  THERE WAS THEN A MORE,

12   SHALL WE SAY, BROADER REACHING ARGUMENT THAT THEN ULTIMATELY

13   POINTED OUT DIFFERENCES THAT DEFENDANT'S COUNSEL FEELS ARE

14   RELEVANT TO THE PLAINTIFFS' THEORY OF LIABILITY.

15          AND SO I THINK THAT WOULD BE HELPFUL FOR YOU TO

16   ADDRESS, MS. CABRASER, AND ALSO TO ADDRESS THE NEMEC CASE, IF

17   YOU WOULD, AND *THOROGOOD*, BOTH OF WHICH WERE FOCUSED ON, IF YOU

18   WILL, BY DEFENSE COUNSEL.  OKAY?

19          SO WHERE DO YOU WANT TO START IN RESPONDING TO

20   MS. STRICKLAND?

21          **MS. CABRASER:**  I'LL TRY TO START AT A LOGICAL

22   BEGINNING AND TRY TO GET IT ALL IN, BUT I THINK, FIRST OF ALL,

23   JUST AS A FRAMING MECHANISM, ALTHOUGH BOTH SIDES ACKNOWLEDGE

24   THAT THIS IS A DELAWARE LAW CASE AND DELAWARE LAW WILL CONTROL,

25   AND, IN FACT, THE JURY INSTRUCTIONS WILL BE TAKEN FROM THE

1  DELAWARE CASE LAW -- I KNOW YOUR HONOR DELINEATED THE ELEMENTS

2  OF THE BREACH OF COVENANT CLAIM UNDER DELAWARE LAW IN YOUR

3  ORDER ON THE MOTIONS TO DISMISS.  WE ARE ALL BASICALLY

4  FAMILIAR, BUT WE HAVE A PROFOUND DIVIDE, A DIFFERENCE OF

5  OPINION BETWEEN PLAINTIFFS AND DEFENDANTS, AS TO WHAT DELAWARE

6  LAW REQUIRES IN THIS CASE, WHAT THE ELEMENTS ARE AND HOW THEY

7  ARE TO BE PROVED.

8            **THE COURT:**  JUST ONE THING, THOUGH.  FOR CLASS

9  CERTIFICATION, ARE WE LOOKING AT NINTH CIRCUIT LAW HERE?

10           **MS. CABRASER:**  WE ARE LOOKING ABSOLUTELY AT THE NINTH

11  CIRCUIT LAW ON HOW PLAINTIFFS MEET THEIR TASK OF FULFILLING THE

12  APPLICABLE CRITERIA OF RULE 23.  ABSOLUTELY RIGHT.  THE NINTH

13  CIRCUIT PREVAILS.  SO WHAT THE NINTH CIRCUIT SAYS ON

14  PREDOMINANCE IN *YOKOYAMA* AND *HANLON* AND *RODRIGUEZ*, THAT'S THE

15  LAW THAT WE FOLLOW.

16           I WOULD ARGUE THAT UNDER ANY CIRCUIT'S LAW ON

17  PREDOMINANCE OR RULE 23, THIS CLASS WOULD AND SHOULD BE

18  CERTIFIED.  BUT, NONETHELESS, WE'RE FOCUSING ON NINTH CIRCUIT

19  LAW FOR PREDOMINANCE BECAUSE NINTH CIRCUIT LAW FOCUSED ON THE

20  LIABILITY ISSUES IN TERMS OF PREDOMINANCE.  IF COMMON ISSUES

21  PREDOMINATE AS TO LIABILITY, THE CLASS IS CERTIFIED UNDER RULE

22  23(B)(3).  IF DAMAGES CAN BE DETERMINED ON A CLASSWIDE BASIS OR

23  USING A COMMON METHODOLOGY OR FORMULA, AS WE SUBMIT THEY CAN

24  HERE, SO MUCH THE BETTER.  IF THEY CAN'T, IT ISN'T FATAL TO

25  CLASS CERTIFICATION.

1          I THINK WE REALLY DON'T HAVE THAT ISSUE HERE, BECAUSE

2   UNLIKE THE LATE-SUBMITTED DELAWARE CASE, WHICH HAD MANY LEVELS

3   OF DIFFICULTY AND MANY GAPS ON THE DAMAGES SIDE OF THE CASE, WE

4   KNOW THAT ALL THE DATA WE NEED TO CALCULATE DAMAGES FOR EACH

5   AND EVERY CLASS MEMBER ON WHATEVER METHODOLOGY OF DAMAGES THE

6   JURY ACCEPTS.  THOSE CALCULATIONS CAN BE DONE IN AN INSTANT.

7   INDEED, CHASE ALREADY HAS ALREADY DONE THEM TO SELECT THE CLASS

8   MEMBERS.

9          **THE COURT:**  OKAY.  LET'S NOT TALK ABOUT THE DAMAGES

10  RIGHT NOW.

11         **MS. CABRASER:**  ALL RIGHT.

12         **THE COURT:**  I JUST HAPPENED TO BRING IT UP BECAUSE IT

13  WAS FILED RECENTLY, THAT WAS AN ISSUE.

14         **MS. CABRASER:**  YES, ALL RIGHT.

15         **THE COURT:**  I WOULD LIKE TO GET BACK TO LIABILITY.

16         **MS. CABRASER:**  ALL RIGHT.  LET'S GO BACK TO THAT

17  BEGINNING.

18         **THE COURT:**  THANK YOU.

19         **MS. CABRASER:**  LET'S GO BACK TO WHAT THE IMPLIED

20  COVENANT OF GOOD FAITH AND FAIR DEALING IS UNDER DELAWARE LAW.

21         **THE COURT:**  OKAY.  HOW ABOUT JUST ADDRESSING, IF WE

22  COULD, THOUGH, IN THAT DISCUSSION, SO THAT WE DON'T GET TOO FAR

23  AFIELD, THE ARGUMENT BY MS. STRICKLAND THAT YOU LOOK AT THE

24  STATE OF MIND OF THE INDIVIDUAL, HOWEVER YOU WANT TO DEFINE

25  OBLIGATION?

1           MS. CABRASER:  I WOULD ANSWER TO THAT, YOUR HONOR,

2    THAT ONE NEED NOT, SHOULD NOT, AND DOES NOT LOOK AT THE

3    SUBJECTIVE STATE OF MIND OF AN INDIVIDUAL IN DETERMINING

4    WHETHER OR NOT A DEFENDANT IS LIABLE FOR BREACH OF THE IMPLIED

5    COVENANT OF GOOD FAITH AND FAIR DEALING, AND THERE ARE A NUMBER

6    OF REASONS FOR THAT.  THEY'RE ALL RELATED.  EACH OF THEM IS A

7    LITTLE BIT DIFFERENT.

8           FIRST OF ALL, AND IN THIS CASE THIS IS PARTICULARLY

9    STRONG, WE'RE NOT DEALING WITH PARTIES WHO BARGAINED FOR A

10   CONTRACT AND WHO EACH DID SOMETHING.  WE'RE NOT DEALING WITH

11   CROSS CLAIMS THAT EACH SIDE WAS UNREASONABLE OR CHANGED THE

12   TERMS OR DIDN'T WANT TO COMPLY WITH THE TERMS.

13          REMEMBER, THIS CLASS IS DEFINED AS PEOPLE WHO WERE IN

14   COMPLIANCE WITH THE LOL TERMS.  THEY WERE MAKING THEIR PAYMENTS

15   TIMELY.  THEY WERE KEEPING THAT LOW MINIMUM PAYMENT.  THEY WERE

16   KEEPING THAT LOW APR AND THEY WERE DOING SO RELIGIOUSLY, PEOPLE

17   WHO STRAYED FROM THE PATH ARE NOT IN THE CLASS.

18          THE COURT:  DO YOU HAVE TO SHOW SOME TYPE OF

19   REASONABLE EXPECTATION OF THE CONTRACTING PARTIES?

20          MS. CABRASER:  WE HAVE TO SHOW THAT CHASE'S CONDUCT

21   WAS UNREASONABLE OR ARBITRARY IN THAT IT FRUSTRATED THE

22   REASONABLE EXPECTATIONS OF THE OTHER PARTY.

23          THE COURT:  OKAY.

24          MS. CABRASER:  AND THAT IS THE PRECISE ARTICULATION

25   FROM DELAWARE LAW AND THE WAY THAT'S STATED IS IMPORTANT,

1  BECAUSE WHAT CHASE IS TRYING TO DO -- AND WHAT MS. STRICKLAND

2  VERY ABLY ARGUED TO YOUR HONOR, WAS A BURDEN SHIFT AND AN

3  EMPHASIS SHIFT FROM CHASE TO THE PLAINTIFFS THAT DOES NOT EXIST

4  UNDER DELAWARE LAW.

5          **THE COURT:**  WELL, THAT'S WHAT I'M ASKING.  IN OTHER

6  WORDS, HER POSITION IS THAT IN DETERMINING WHETHER SOMEONE HAS

7  ACTED ARBITRARILY AND FRUSTRATED THE REASONABLE EXPECTATION OF

8  THE OTHER SIDE, YOU HAVE TO AT LEAST SHOW WHAT THE REASONABLE

9  EXPECTATION WAS.  AND SHE SAYS YOU HAVE TO LOOK AT EACH

10  INDIVIDUAL'S EXPECTATION AS AN INDIVIDUAL MATTER AS A

11  SUBJECTIVE MATTER, AND THEN YOU LOOK TO SEE IF THAT'S

12  REASONABLE.

13          **MS. CABRASER:**  ALL RIGHT.  WELL --

14          **THE COURT:**  NOW, A LITTLE BIT LIKE THE IDEA OF

15  INDIVIDUAL RELIANCE IN A FRAUD CASE.  ALL RIGHT, SOMETHING OF

16  THAT NATURE.

17          NOW, IS THAT A CORRECT STATEMENT OF THE LAW, IN YOUR

18  VIEW?  AND IF YOU DON'T THINK IT IS, WHY ISN'T IT?  SHE'S

19  RELYING ON NEMEC FOR HER ARGUMENT.

20          **MS. CABRASER:**  IT'S ABSOLUTELY NOT A CORRECT

21  STATEMENT OF THE LAW.  AND REFERENCE TO *DUNLAP* AND *NEMEC* AND TO

22  THE *JOHNSON VERSUS GEICO* CASE CERTIFYING A CLASS UNDER THAT

23  SAME DELAWARE LAW DEMONSTRATES THAT THAT IS NOT A CORRECT VIEW

24  OF THE LAW.

25          THE RULE UNDER THE RESTATEMENT OF CONTRACTS, WHICH

1   APPLIES TO THESE CLAIMS, IS THAT ONE EFFECTUATES REASONABLE

2   EXPECTATIONS OF THE AVERAGE MEMBER OF THE PUBLIC WHO ACCEPTS

3   IT.

4          BY THE WAY, THAT WAS JUDGE WHYTE'S RESTATEMENT OF THE

5   RESTATEMENT, WHICH ALSO APPLIES IN DELAWARE, IN THE *EWERT*

6   *VERSUS E-BAY* CLASS CERTIFICATION IN THIS DISTRICT.

7          SO WE KNOW AS A RULE OF CONTRACT INTERPRETATION THAT

8   APPLIES DIRECTLY TO BREACH OF THE IMPLIED COVENANT, THAT YOU

9   LOOK AT THE REASONABLE EXPECTATIONS OF THE AVERAGE MEMBER OF

10  THE PUBLIC WHO ACCEPTS IT.  WE DON'T DELVE IN, AS THE COURTS

11  SAY, TO INDIVIDUAL EXPECTATIONS.

12         WE LOOK FIRST AT THE CONDUCT OF THE PARTY WHO IS

13  ALLEGED TO BE THE BREACHING PARTY.  THAT'S WHAT *DUNLAP* SAYS.

14  THAT'S WHAT NEMEC SAYS.  YOU EVALUATE THAT CONDUCT AGAINST A

15  REASONABLE PERSON STANDARD.  THERE'S A REASONABLE PERSON

16  STANDARD ON EACH SIDE OF THE EQUATION HERE.  YOU LOOK FIRST AT

17  THE CONDUCT.  YOU DETERMINE WHETHER OR NOT THAT IT IS

18  REASONABLE OR UNREASONABLE, WHETHER IT'S FAIR OR WHETHER IT'S

19  ARBITRARY.  AND YOU DON'T LOOK AT WHAT WAS IN CHASE'S MIND,

20  ALTHOUGH THAT MAY BE INFORMATIVE AND PROBATIVE.

21         YOU LOOK AT WHAT CHASE DID.  IS WHAT CHASE DID

22  REASONABLE?  DOES IT -- THEN WHEN YOU GET TO THE:  DOES IT

23  VIOLATE THE REASONABLE EXPECTATIONS OF THE PARTY ON THE OTHER

24  SIDE, AGAIN, WHAT A SUBJECTIVE EXPECTATION IS IS IRRELEVANT

25  BECAUSE THE LAW IS NOT GOING TO EFFECTUATE THAT REGARDLESS.

```
 1           THE LAW IS GOING TO EFFECTUATE THE REASONABLE
 2    EXPECTATIONS, AND THE WAY UNDER CONTRACTS LAW WE DECIDE
 3    REASONABLE EXPECTATIONS, THE WAY A JURY DECIDES IT -- WE DON'T
 4    DECIDE IT AS A MATTER OF LAW, AND WE CAN'T DECIDE IT TODAY --
 5    BUT THE JURY DECIDES IT BECAUSE THEY USE A REASONABLE PERSON
 6    STANDARD, AND IT'S THE SAME STANDARD WHETHER YOU'RE TALKING
 7    ABOUT TORT LAW, NEGLIGENCE, WHAT WOULD A REASONABLE PERSON DO,
 8    WHETHER YOU'RE TALKING ABOUT CONTRACT LAW DIRECTLY, OR WHETHER
 9    YOU'RE TALKING ABOUT THE CONSUMER FRAUD LAW, AS JUDGE SCHROEDER
10    POINTED OUT IN THE *YOKOYAMA* DECISION.
11           YOU'RE LOOKING AT MATERIALITY.  YOU ARE LOOKING AT
12    OBJECTIVE STANDARD.  YOU'RE LOOKING AT REASONABLENESS.  YOU ARE
13    LOOKING AT THE AVERAGE OF WHAT WOULD THE AVERAGE MEMBER OF THE
14    COMMUNITY EXPECT.
15           NOW, WHAT'S INTERESTING ABOUT THIS CASE IS THAT CHASE
16    IS TRYING TO CHASE A RED HERRING.  THIS IS, BY THE WAY, NOT THE
17    HOME IMPROVEMENT LOAN CLASS.  THIS IS THE LIFE-OF-THE-LOAN
18    CLASS.  AND CHASE CATEGORIZED ALL THESE LOANS AS THE SAME, AND
19    THE SALIENT CHARACTERISTICS OF AN LOL -- IT'S AN UNFORTUNATE
20    ACRONYM, BUT IT'S WHAT CHASE CHOSE -- IS THERE'S A LOW APR.  IF
21    YOU MAKE THE PAYMENTS, YOU KEEP THE LOW APR.  YOU MAKE THE
22    PAYMENTS BY PAYING THE MINIMUM PAYMENT.  EVERYBODY IN THE CLASS
23    KNEW THAT.  THAT'S WHAT ALL THE SOLICITATION SAID, HERE'S THE
24    DEAL -- RIGHT?  THE DEAL ISN'T IF YOU WANT TO BUY A SWEATER,
25    HERE'S THE LOAN YOU GET.  IT'S:  IF YOU WANT THIS TYPE OF A
```

 1   LOAN WHERE YOU LOCK IN A LOW APR FOR THE LIFE OF THE LOAN BY

 2   MAKING YOUR MINIMUM PAYMENT, NOT LOOKING UP ON OTHER HIGHER

 3   DEBT -- THERE'S A VERY CLEAR PATH TO COMPLY WITH THE TERMS OF

 4   THIS DEAL.

 5           NOT, WHAT'S INTERESTING ABOUT THIS CASE AND WHAT

 6   MAKES THIS A STRONGER CASE FOR CLASS CERTIFICATION, EVEN THAN

 7   *JOHNSON VERSUS GEICO*, OR *EWERT VERSUS E-BAY*, OR THE *KILLINGTON*

 8   THE CASE WHICH WAS CERTIFIED UNDER THE BREACH OF COVENANT LAW

 9   OF VERMONT WHICH HAS THE SAME REASONABLE OR JUSTIFIABLE

10   STANDARD HERE, IS THAT IN THIS CASE THERE WAS A CLEAR PATH TO

11   COMPLIANCE.  THE CLASS MEMBERS KNEW EXACTLY WHAT THEY NEEDED TO

12   DO, AND THERE'S NO -- IT'S NOT LIKE *THOROGOOD*.  THERE'S NO

13   QUESTION ALL OF THEM DID IT.  THAT'S WHY THEY GET CHOSEN BY

14   CHASE FOR THE CHANGE IN TERMS.

15           AND, SO, THE LAW LOOKS AT THE METHODOLOGY OF PROOF OF

16   SOMETHING THAT COULD BE SUBJECTIVE LIKE EXPECTATIONS.  NOW, WE

17   KNOW IT'S NOT -- IT'S NOT PARTICULAR EXPECTATIONS OF A

18   PARTICULAR PERSON, BUT THE REASONABLE EXPECTATION OF A

19   REASONABLE PERSON THAT THE LAW -- SO HOW DO WE KNOW --

20           **THE COURT:**  ALL RIGHT.  SO YOU ARE RELYING ON THE

21   CASES YOU CITED TO ARGUE THAT MS. STRICKLAND IS INCORRECT IN

22   STATING THAT YOU LOOK AT THE SUBJECTIVE INTENT OF THE CARD

23   MEMBER?

24           **MS. CABRASER:**  THAT IS CORRECT.

25           **THE COURT:**  OKAY.  NOW I WILL LOOK AT THAT AGAIN JUST

1   TO MAKE SURE.  BUT THAT IS HER KEY POINT:  IF YOU HAD TO LOOK

2   AT A MILLION DIFFERENT STATES OF MIND, YOU WOULD NOT HAVE A

3   CLASS ACTION.

4            **MS. CABRASER:**  THAT'S RIGHT.

5            **THE COURT:**  ALL RIGHT.

6            **MS. CABRASER:**  AND THE NEMEC, IF I MIGHT, YOUR HONOR,

7   JUST FOR ONE SECOND, BECAUSE IT IS AN IMPORTANT POINT.

8            **THE COURT:**  THAT WAS THE QUESTION.

9            **MS. CABRASER:**  I AM NOT GOING TO STRAY.

10           **THE COURT:**  WELL, YOU KIND OF STRAYED AROUND FOR A

11  WHILE THERE.

12           **MS. CABRASER:**  I THINK WE ARE BOTH WANDERING.  IT'S A

13  FASCINATING JOURNEY.

14           **THE COURT:**  IS THAT A SUBJECTIVE ANALYSIS OR

15  OBJECTIVE?

16           **MS. CABRASER:**  THAT WAS, SO I WILL RESCIND IT.

17           TO KEY FROM -- TO KEY DIRECTLY FROM --

18           **THE COURT:**  I MEAN, IT'S INTERESTING.  I DON'T KNOW

19  ABOUT FASCINATING.  IT'S INTERESTING.

20           **MS. CABRASER:**  IT WOULD BE OF INTEREST TO A

21  REASONABLE PERSON.

22           WITH RESPECT TO *NEMEC*, OKAY?

23           **THE COURT:**  GOOD.  LET'S GET TO --

24           **MS. CABRASER:**  THE PREDOMINANT -- IF YOU LOOK AT THE

25  *NEMEC* CASE, WHICH BY THE WAY, WAS NOT BROUGHT AS A CLASS

1   ACTION.  CLASS QUESTIONS WERE NEVER REACHED IN NEMEC.  IT WAS

2   TWO VERY SOPHISTICATED PARTIES TO A CONTRACT.

3           LEAVING ASIDE THOSE DISTINCTIONS, THE KEY QUESTIONS,

4   THE PREDOMINANT QUESTIONS IN NEMEC ARE WHETHER THE DEFENDANT

5   ENGAGED IN, QUOTE, "ARBITRARY OR UNREASONABLE CONDUCT."  WAS A

6   LOW FIXED APR A REASONABLY EXPECTED FRUIT OF THE BARGAIN

7   BETWEEN THE CLASS MEMBERS AND CHASE, AND DID CHASE'S CONDUCT

8   PREVENT CLASS MEMBERS FROM RECEIVING THE BENEFITS OF THEIR LOW

9   FIXED APR?  THE QUESTION, WHAT WAS IN EACH CLASS MEMBERS'S

10  HEAD, IS NOT A PART OF *NEMEC*, AND IT'S NOT A PART OF OUR PROOF.

11          THERE'S AN ADDITIONAL BLACK LETTER ADAGE OF DELAWARE

12  LAW WHICH IS REFERRED TO IN NEMEC, AND I APOLOGIZE, YOUR HONOR,

13  THAT WE DID NOT STATE THIS IN EITHER OF OUR BRIEFS, BUT IT IS

14  STATED IN NEMEC, AND, IN FACT, IT'S MENTIONED IN BOTH THE

15  MAJORITY DECISION AND THE DISSENT DECISION, AND IT IS A QUOTE

16  FROM A RECENT DELAWARE CASE, AND THIS IS THE PRINCIPLE:

17                  "DELAWARE LAW," QUOTE:

18                  "PRESUMES THAT PARTIES NEVER ACCEPT

19          THE RISK THAT THEIR COUNTERPARTIES WILL

20          EXERCISE THEIR CONTRACTUAL DISCRETION IN BAD

21          FAITH."

22          IN OTHER WORDS, WHAT IS THE REASONABLE EXPECTATION

23  THAT DELAWARE LAW PRESUMES EACH MEMBER OF THE CLASS HAS.  AND

24  THAT EXPECTATION IS:  IF I FOLLOW THE DEAL, IF I ADHERE TO THE

25  TERMS OF THE CONTRACT, THE OTHER SIDE WILL NOT TREAT ME

1  UNFAIRLY.

2       THIS FURTHER QUESTION, THE PIVOTAL QUESTION, THE

3  PREDOMINANT QUESTION, RIGHT BACK INTO CHASE'S COURT IS:  WHAT

4  CHASE DID -- WE KNOW WHAT IT WAS.  WE'VE GOT ALL THE EVIDENCE:

5  IS WHAT IT DID UNREASONABLE?

6       **THE COURT:**  OKAY, BUT THAT, AGAIN, GOES TO THE MERITS

7  OF THE CASE.

8       NOW, LET'S GO BACK TO THE OTHER POINT.  YOU HAVE MADE

9  YOUR ARGUMENT WITH RESPECT TO DISTINGUISHING NEMEC.

10      THE OTHER POINT THAT WAS RAISED IS THAT THERE ARE

11  DIFFERENCES IN THE SOLICITATION LETTERS THAT WENT OUT TO THE

12  CARD MEMBERS THAT DIFFERED IN SUCH A WAY THAT IT HAS A

13  SIGNIFICANT BEARING AS AN EVIDENTIARY MATTER ON THE THEORY OF

14  LIABILITY HERE.  YOU TOUCHED ON THAT VERY BRIEFLY, AND THEN GOT

15  AWAY FROM IT, AND SO I'M NOT SURE I FOLLOWED EXACTLY WHAT YOU

16  WERE SAYING SOMETIME EARLIER.

17      **MS. CABRASER:**  MM-HMM.

18      **THE COURT:**  THAT THE ARGUMENT BEING MADE BY CHASE'S

19  COUNSEL IS THAT THE PLAINTIFF HAS A PARTICULAR THEORY THAT IS

20  DEPENDENT UPON A PARTICULAR TYPE OF SOLICITATION BUT THE

21  SOLICITATIONS VARY TOO MUCH TO TREAT THEM AT ALL SAME.

22      **MS. CABRASER:**  AND WE DISAGREE WITH EVERY ELEMENT OF

23  THAT STATEMENT.

24      **THE COURT:**  OKAY.  LET'S START WITH THE PLAINTIFFS'

25  THEORY.

1          **MS. CABRASER:**  OUR THEORY IS THAT WE ARE ADDRESSING

2   ONE LOAN THAT IS IDENTICAL IN ITS --

3          **THE COURT:**  THAT'S YOUR ARGUMENT.  WHAT'S YOUR THEORY

4   OF LIABILITY?

5          **MS. CABRASER:**  ALL RIGHT.  OUR THEORY OF LIABILITY --

6          **THE COURT:**  OKAY.

7          **MS. CABRASER:**  -- IS THAT CHASE BREACHED THE COVENANT

8   OF GOOD FAITH AND FAIR DEALING WHEN IT UNILATERALLY IMPOSED A

9   CHANGE IN TERMS ON A MILLION CAREFULLY SELECTED LOL BORROWERS,

10  AND THE CHANGE IN TERMS WAS INTENDED.  AND CHASE'S DOCUMENTS

11  ATTACHED TO THE DECLARATION OF ERIC GIBBS DEMONSTRATE THIS.

12  CHASE MADE THAT CHANGE TO INCREASE THE PROFITABILITY OF THOSE

13  LOANS AS A CATEGORY.

14         **THE COURT:**  YES.

15         **MS. CABRASER:**  CHASE SAID --

16         **THE COURT:**  I KNOW WHAT THEY DID.  ALL RIGHT.  SO

17  THAT'S A QUESTION WHETHER ACTING ARBITRARILY OR NOT -- THEY ARE

18  IN THE MONEY BUSINESS.

19         **MS. CABRASER:**  AND IT GOES --

20         **THE COURT:**  LEAVE THAT OUT.

21         **MS. CABRASER:**  ALL RIGHT.

22         **THE COURT:**  THE QUESTION IS AS TO THE EXPECTATION.

23  WHAT MS. STRICKLAND FOCUSED ON WAS, GETTING BACK, AGAIN, TO

24  WHETHER EVERYONE WOULD HAVE THE SAME EXPECTATION, SHE SAYS EVEN

25  IF YOU WANT TO CONCEDE THAT YOU DON'T LOOK TO THE IDIOSYNCRATIC

1  STATE OF MIND OF ANY GIVEN CARD MEMBER AS TO WHAT THEY ACTUALLY

2  THOUGHT, AND THEY DECIDE WHETHER IT'S REASONABLE ON AN

3  OBJECTIVE STANDARD, BUT, RATHER, THAT YOU LOOK -- SHE'S SAYING

4  IF YOU CONCEDE -- OR IF ONE WANTS TO ARGUE THAT YOU'RE LOOKING

5  AT A REASONABLE MAN STANDARD FROM THE BEGINNING AS TO WHAT

6  WOULD BE EXPECTED BY THE AVERAGE CONSUMER, IF YOU WANT TO PUT

7  IT THAT WAY, LOOKING AT THIS, THE MATERIAL, THAT THEY DIDN'T

8  ALL GET THE SAME MATERIAL.

9          SO I THEN SAID:  WELL, WHAT'S THE DIFFERENCE, THEY

10 SEEM TO BE VERY SMALL DIFFERENCES?  SHE SAID:  NOT WHEN YOU

11 LOOK AT WHAT THE THEORY OF LIABILITY IS HERE AND THE ARGUMENT

12 THAT PLAINTIFFS ARE MAKING, AND THEN SHE ENDEAVORED TO

13 CHARACTERIZE THE PLAINTIFFS' ARGUMENT.  THAT'S WHAT I WANT TO

14 YOU ADDRESS.

15         **MS. CABRASER:**  WE DISAGREE WITH THAT

16 CHARACTERIZATION.

17         **THE COURT:**  WHAT DO YOU SAY YOUR ARGUMENT IS?

18         **MS. CABRASER:**  AS I SAID BEFORE, THIS IS NOT A HOME

19 LOAN CLASS.  THIS IS NOT A CLASS OF PEOPLE WHO ALL DECIDED TO

20 WRITE THEIR CHECK TO MAKE A PARTICULAR TYPE OF PURCHASE.  THAT

21 IS CLASS OF PEOPLE WHO TOOK OUT A CHECK LOAN THAT HAD THE SAME

22 TERMS AND CONDITIONS WHEN THEY WROTE THE CHECK.

23         **THE COURT:**  AND THEIR EXPECTATION WAS?

24         **MS. CABRASER:**  AND THEIR EXPECTATION WAS, THEIR

25 UNIFORM EXPECTATION WAS -- IT IS UP TO THE JURY TO DECIDE

1  WHETHER THIS IS REASONABLE OR NOT.

2          **THE COURT:**  WHAT ARE YOU ARGUING TO THE JURY THEIR

3  EXPECTATION WAS?

4          **MS. CABRASER:**  WE ARE ARGUING TO THE JURY THAT THE

5  EXPECTATION OF EVERY CLASS MEMBER WAS THAT, IF THEY MADE THEIR

6  MONTHLY PAYMENTS ON TIME, IF THEY MADE THEIR MINIMUM MONTHLY

7  PAYMENTS ON TIME, IF THEY ADHERED TO THE TERMS AND CONDITIONS

8  OF THE LOANS AS SET FORTH IN THE SOLICITATION LETTERS, AND THEY

9  ARE ALL IDENTICAL AS TO THAT, AND AS AFFECTED BY THE CARDHOLDER

10  AGREEMENT, AND THEY ARE ALL IDENTICAL AS TO THAT.

11          **THE COURT:**  IF THEY MADE TIMELY PAYMENTS, THAT NOBODY

12  WOULD CHANGE THE TERMS?

13          **MS. CABRASER:**  YES.  IF I MAKE MY PAYMENT ON TIME, I

14  WILL LOCK IN A LOW APR FOR THE LIFE OF THE LOAN.

15          **THE COURT:**  OKAY.  NOW --

16          **MS. CABRASER:**  HENCE, LOL.

17          **THE COURT:**  THEN THEY ARE GOING TO POINT TO THE CARD

18  MEMBER AGREEMENT SAYS:  YOU DON'T HAVE A REASONABLE

19  EXPECTATION.

20          **MS. CABRASER:**  THAT'S A MERITS ISSUE.

21          **THE COURT:**  YES, IT IS.  YES, IT IS.

22          **MS. CABRASER:**  AND, AND DELAWARE LAW PRESUMES THAT

23  YOU DON'T HAVE THE EXPECTATION THAT YOU'RE GOING TO GET BAD

24  FAITH FROM THE OTHER SIDE.

25          **THE COURT:**  OKAY.  THEN WE HAVE TO DETERMINE WHAT BAD

1  FAITH IS.

2        **MS. CABRASER:**  THAT'S CORRECT.

3        **THE COURT:**  AND THAT GOES BACK TO EXPECTATIONS AND

4  WHY ONE WOULD THINK SOMEBODY --

5        **MS. CABRASER:**  WELL --

6        **THE COURT:**  SO IT SEEMS TO ME, THOUGH, THAT YOU

7  ANSWERED WHATEVER THE CHALLENGE WAS HERE.

8        NOW, IF MS. STRICKLAND WANTS TO POINT OUT YOU CHANGED

9  YOUR TUNE, SHE GOT HER IMPRESSION AS TO WHAT YOUR ARGUMENT WAS

10 AS TO SOMETHING YOU'VE ACTUALLY SAID, SHE CAN POINT THAT OUT TO

11 ME.

12        OTHER THAN THAT, WHAT YOU'RE SAYING IS THAT WHAT THE

13 EXPECTATION IS THAT IF WE DO EVERYTHING RIGHT ON OUR END, YOU

14 ARE NOT GOING TO CHANGE THE TERMS BECAUSE YOU SHOULD BE HAPPY

15 WITH WHAT YOU ARE DOING.  THAT'S WHAT YOU GAVE US IN THE FIRST

16 PLACE.

17        **MS. CABRASER:**  THAT'S RIGHT.

18        **THE COURT:**  THAT MAY BE FINE IF THAT IS THE

19 PLAINTIFFS' POSITION.  IF MS. STRICKLAND CAN POINT WHERE YOU

20 WERE MAKING DIFFERENT ARGUMENTS ON BEHALF OF PERHAPS

21 DIFFERENTLY SITUATED PEOPLE, SHE CAN DO THAT.

22        OKAY.  NOW, I THINK BOTH OF YOU SPENT SOME TIME

23 DISCUSSING AMBIGUOUS TERMS IN CONTRACTS.  WHY WOULD THAT BE

24 RELEVANT HERE?  THE TERMS SEEM --

25        **MS. CABRASER:**  YOUR HONOR, I --

1           **THE COURT:**  THE TERMS OF THE CONTRACT ARE PRETTY

2  STRAIGHTFORWARD.

3           **MS. CABRASER:**  I'M NOT SURE THAT THAT IS IMPORTANT.

4           **THE COURT:**  OKAY.

5           **MS. CABRASER:**  I THINK WHAT'S IMPORTANT IS WHETHER

6  THE CONDUCT AT ISSUE --

7           **THE COURT:**  OKAY.

8           **MS. CABRASER:**  -- MET THE ARBITRARY OR UNREASONABLE

9  TEST UNDER DELAWARE LAW, AND WE ALL KNOW WHAT THE UNIVERSE OF

10 FACTS AND DOCUMENTS AND POLICIES IS THAT'S GOING TO ATTEND TO

11 THAT.  IN FACT, WE HAVE A PRETTY GOOD IDEA FROM THE EXHIBITS

12 WHAT THE TRIAL IS GOING TO LOOK LIKE.

13          **THE COURT:**  LET'S GO FOR A MOMENT -- AND I'LL LET YOU

14 START THIS, AND THEN I CAN GET BACK TO MS. STRICKLAND.

15          ON THE QUESTION OF DAMAGES, IT SOUNDED LIKE THE

16 DEFENSE WAS ARGUING:  IF YOU LOOK AT EACH INDIVIDUAL MEMBER AND

17 YOU LOOK AT THEIR WHOLE LOAN PORTFOLIO AND FIGURE OUT WHAT THEY

18 DECIDED TO PAY AT VARIOUS TIMES, THAT YOU COULD SET OFF IN ONE

19 WAY OR ANOTHER WHATEVER LOSSES THEY ARGUABLY SUSTAIN BY HAVING

20 TO PAY THINGS OFF AT A FASTER RATE WITH WHATEVER ELSE THEY DID

21 OR GOT IN EXCHANGE, AND I WASN'T SURE THAT THAT REALLY COUNTS

22 IN THE FIRST INSTANCE.  THE PLAINTIFFS WOULD, I GATHER, JUST

23 SHOW THAT THEY HAD TO PAY MORE THAN THEY OTHERWISE WOULD HAVE

24 HAD TO PAID AT ANY GIVEN TIME.

25          **MS. CABRASER:**  THAT'S RIGHT, YOUR HONOR.  WE DON'T

1    THINK IT MATTERS AT ALL.  THE DAMAGES THEORIES ARE VERY SIMPLE

2    HERE.  THE CLASS MEMBERS ARE SAYING FOR THOSE WHO ACCEPTED, YOU

3    KNOW, UNDER THE HOBSON'S CHOICE CHASE POSED, YOU KNOW, HIGHER

4    APR OR HIGHER MINIMUM PAYMENT, IF YOU ACCEPT THE HIGHER APR,

5    THEN THE DAMAGES THEORY IS YOU ARE ENTITLED TO HAVE YOUR APR

6    RESTORED AND THE EXCESS INTEREST YOU PAID RETURNED.  THAT COULD

7    BE DETERMINED FROM CHASE RECORDS, PUSH A BUTTON, IT APPEARS.

8           FOR CLASS MEMBERS WHO DID NOT ACCEPT THAT, THEN THE

9    QUESTION FOR THE JURY IS WHETHER THEY ARE ENTITLED TO ALL OR A

10   PART OF THE UPFRONT FEE THEY PAID FOR THEIR LOANS, AND THERE'S

11   ALSO A KNOWN QUANTUM WITH RESPECT TO EVERY SINGLE CLASS MEMBER.

12          SO UNLIKE THE *ALLAPATTAH* 11TH CIRCUIT CASE, WHICH WAS

13   CERTIFIED AS A CLASS FOR BREACH OF COVENANT UNDER 35 STATES'

14   LAWS, BECAUSE THOSE ARE ALL THE STATES THAT HAVE, BY THE WAY,

15   THE REASONABLE STANDARD -- WE TOOK A LOOK UNDERNEATH TO SEE IF

16   THERE WAS A SPECIFIC DISCUSSION OF DELAWARE LAW IN *ALLAPATTAH*.

17   THERE WASN'T, EXCEPT THE COURT SAID:  WE LOOKED AT ALL THE

18   STATES' LAWS, WE TOOK OUT OF THE CLASS STATES THAT HAVE A

19   SUBJECTIVE STANDARD.

20          **THE COURT:**  SUBJECTIVE?

21          **MS. CABRASER:**  SUBJECTIVE THAT APPLIES TO BREACH.  IT

22   TURNS OUT THAT WAS LOUISIANA.  LOUISIANA HAS A SUBJECTIVE

23   STANDARD.  EVERYONE ELSE --

24          **THE COURT:**  YOU ARE SAYING DELAWARE WAS IN THAT CASE.

25          **MS. CABRASER:**  DELAWARE WAS IN THE CASE, AS WAS

 1  VERMONT, AS WERE THE OTHER STATES WE'VE DEALT WITH IN CLASS

 2  CERT IN *EWERT* AND *JOHNSON* AND *KILLINGTON*.  SO, ALL OR PART OF

 3  THE UPFRONT FEES.

 4          SO WE DON'T HAVE THIS VAST, SPRAWLING INDIVIDUALIZED

 5  ADMINISTRATIVE PROCESS THAT OCCURRED IN *ALLAPATTAH* WHICH,

 6  NONETHELESS, DID NOT DEFEAT CLASS CERTIFICATION.

 7          WHAT WE HAVE ARE A METHODOLOGY THAT THE JURY CAN

 8  CHOOSE TO ACCEPT OR NOT, A CALCULUS THAT CAN BE MADE UNDER THE

 9  METHODOLOGY, A CALCULUS THAT CAN BE MADE EVEN IF THE JURY

10  DECIDES TO ACCEPT A SETOFF ARGUMENT THAT CHASE MIGHT HAVE.

11          CHASE MIGHT SAY, WELL, YOU KNOW, HERE ARE THE

12  CATEGORIES IN WHICH WE ARE ENTITLED TO A SETOFF, BECAUSE

13  SOMEHOW THESE CONSUMERS GOT PART OF THE BENEFIT OF THEIR

14  BARGAIN AND THAT OUGHT TO BE TAKEN INTO ACCOUNT; THEIR -- YOU

15  KNOW, THEIR FEE OUGHT TO BE PRORATED OR SOME SUCH.  THEY CAN

16  TAKE THAT DEFENSE.

17          **THE COURT:**  IS THAT REALLY A SETOFF?

18          **MS. CABRASER:**  YOUR HONOR, IF THEY PERSUADED THE JURY

19  IN THE CONTEXT OF BAD FAITH/GOOD FAITH DECISION ABOUT WHO'S

20  ACTING REASONABLY OR ARBITRARILY, IT MIGHT BE.  WE DON'T THINK

21  IT'S LIKELY.  WE THINK WHAT'S LIKELY IS IF WE PROVE OUR CASE ON

22  LIABILITY, WE WILL APR'S RESTORED, EXCESS INTEREST RETURNED.

23  WE WILL HAVE INITIAL TRANSACTION FEES RESTORED.  THERE ARE MORE

24  COMPLEX CALCULATIONS THAT DEAL WITH LOST VALUE OF THE LOAN.

25  THOSE TYPES OF DAMAGES ARE ALLOWABLE UNDER BREACH OF THE

1   COVENANT.  THEY CAN ALSO BE READILY CALCULATED.

2            **THE COURT:**  WHAT DO YOU UNDERSTAND THE SETOFF THEORY

3   TO BE?

4            **MS. CABRASER:**  WELL, YOUR HONOR, WE ARE -- WE DON'T

5   ACCEPT THE SETOFF THEORY, BUT WE'RE MENTIONING IT BECAUSE IT'S

6   A DEFENSE THAT CHASE MAY WANT TO RAISE.  AND THE POINT IS IT IS

7   NOT A DEFENSE THAT IS INDIVIDUALIZED IN THE SENSE THAT IT WOULD

8   DEFEAT CLASS CERTIFICATION.  IT'S A DEFENSE THEY WOULD COME IN

9   WITH AT THE DAMAGES PHASE, IF THERE WERE A SEPARATE DAMAGES

10  PHASE.

11           UNDER *ALLAPATTAH* AND UNDER THE CASES CITED IN

12  *YOKOYAMA*, IT'S NOT RELEVANT TO CERTIFYING THE CLASS AT THIS

13  INSTANCE.

14           BUT I WANTED TO TAKE A HYPOTHETICAL WHICH IS

15  ACTUALLY --

16           **THE COURT:**  WHAT DO YOU UNDERSTAND THEIR SETOFF TO

17  BE, THOUGH, AS THEY ARGUE IT?

18           **MS. CABRASER:**  WELL, NOT TO MAKE THEIR ARGUMENT FOR

19  THEM, I THINK WHAT THEY'RE SAYING IS, COINCIDENTALLY OR

20  INADVERTENTLY, BECAUSE OF WHAT CHASE DID TO THE MEMBERS OF THE

21  CLASS, SOME CLASS MEMBERS MAY HAVE GOTTEN SOME BENEFIT OR HAD

22  THEIR DAMAGES REDUCED.

23           **THE COURT:**  YES.  HOW?

24           **MS. CABRASER:**  BY PAYING DOWN -- BY BEING FORCED TO

25  PAY DOWN THEIR LOAN MORE RAPIDLY THAN THEY OTHERWISE WOULD HAVE

1  UNDER THE ORIGINAL CONTRACT.

2          **THE COURT:**  WHAT WAS THE SETOFF YOU UNDERSTAND

3  THEY'RE ARGUING?  IN OTHER WORDS, THEY PAID IT OFF MORE

4  RAPIDLY?  WHAT WAS THE BENEFIT THAT'S BEING SET OFF AGAINST

5  THAT?  WHAT DO YOU UNDERSTAND THAT TO BE?

6          **MS. CABRASER:**  WE DON'T -- WE DON'T SEE A -- WE DON'T

7  SEE --

8          **THE COURT:**  I KNOW YOU DON'T SEE IT, BUT THAT'S THEIR

9  ARGUMENT, THAT YOU PAID IT OFF, SO NOW YOU'RE OUT FROM UNDER

10 YOUR LOAN FASTER.  IS THAT THE SO-CALLED SETOFF?

11         **MS. CABRASER:**  I THINK THAT'S WHAT THEY'RE SAYING.

12         **THE COURT:**  PEOPLE CAN CHOOSE HOW THEY WANT TO PAY

13 OFF THEIR DEBT.

14         **MS. CABRASER:**  AND THAT'S OUR POINT.

15         **THE COURT:**  OKAY.

16         **MS. CABRASER:**  OUR POINT IS PEOPLE CAN CHOOSE AND OUR

17 PEOPLE, OUR CLASS MEMBERS, WEREN'T CHOOSING ARBITRARILY.  THEY

18 WERE ACCEPTING AN OFFER CHASE MADE THEM.  CHASE MADE THE OFFER:

19 HERE'S HOW YOU CAN DO THIS.

20         **THE COURT:**  OKAY.  FINE.

21         **MS. CABRASER:**  AND THEY SAID YES.

22         **THE COURT:**  OKAY.  I'LL ASK HER ABOUT HER SETOFF, NOT

23 YOU.  THAT'S OKAY.

24         **MS. CABRASER:**  ALL RIGHT.

25         **THE COURT:**  OKAY.  SO I THINK THAT YOU HAVE

1 ADDRESSED, I BELIEVE, WHAT WAS RAISED BY MS. STRICKLAND AS THE

2 PRIMARY POINTS IN FAVOR OF HER ARGUMENT; THE POINTS BEING THAT

3 YOU DO NOT LOOK TO AN OBJECTIVE STATE OF MIND AS A REASONABLE

4 EXPECTATION FOR PURPOSES OF THE COVENANT.  THAT WAS HER FIRST

5 POINT.  AND THE SECOND WAS THAT, IRRESPECTIVE OF WHETHER YOU

6 DO, THAT THE PLAINTIFF HAD A THEORY AS TO EXPECTATION THAT WAS

7 DEPENDENT UPON THE SOLICITATION LETTERS, AND THAT THE LETTERS

8 WERE SIGNIFICANTLY DIFFERENT AS COMPARED WITH THAT EXPECTATION.

9          YOU HAVE COVERED THOSE POINTS, I BELIEVE.

10         **MS. CABRASER:**  WE HAVE.

11         AND WE ALSO MADE THE POINT, AND I THINK IT IS

12 PERTINENT TO THE EXPECTATIONS POINT, THAT -- IT IS A COMMON

13 QUESTION, WHICH WE'RE NOT ANSWERING TODAY, BUT WE THINK IT'S A

14 COMMON QUESTION TO BE ASKED AT TRIAL, WHETHER SOMETHING --

15 WHETHER IT IS REASONABLE TO EXPECT SOMETHING THAT HAS NEVER

16 HAPPENED IN THE PAST TO HAPPEN IN THE FUTURE.  IN OTHER WORDS,

17 WE KNOW THAT CHASE'S AND THE INDUSTRY'S MINIMUM MONTHLY

18 PAYMENTS WERE TWO TO TWO-AND-A-HALF PERCENT.  CHASE HADN'T

19 RAISED ITS PAYMENT MINIMUMS IN 13 YEARS.  AND SO WHEN SOMETHING

20 HAS NEVER HAPPENED IN, YOU KNOW, MEANINGFUL HISTORY, IS IT

21 REASONABLE TO EXPECT THAT THERE IS A REASONABLE EXPECTATIONS

22 THAT IT WILL OCCUR.  CERTAINLY, THE CLASS MEMBERS DIDN'T EXPECT

23 THAT.  AND IT'S GOING TO BE UP TO THE JURY TO DECIDE UNDER ALL

24 OF THOSE OBJECTIVE FACTS AND CIRCUMSTANCES.

25         **THE COURT:**  OKAY.  BUT THAT'S ON THE MERITS AGAIN.

1          IN OTHER WORDS, YOU'RE SAYING THAT YOU HAVE -- YOUR

2    ARGUMENT BASED ON WHAT'S A REASONABLE EXPECTATION -- SO FAR

3    YOU'VE TOLD ME TWO THINGS.  ONE, THEY DIDN'T EXPECT THE RATE TO

4    CHANGE BECAUSE THEY WERE IN FULL COMPLIANCE, AND SO THEY

5    THOUGHT THINGS WOULD JUST GO ON IN HAPPY PERPETUITY BECAUSE

6    EVERYBODY WAS DOING EVERYTHING THEY NEEDED TO DO AND THEY WERE,

7    FOR LACK OF A BETTER WORD, A GOOD CUSTOMER.

8          NOW, THE OTHER ARGUMENT IS THAT IF NOBODY HAS EVER

9    DONE ANYTHING OF QUITE THIS MAGNITUDE, THEN YOU WOULDN'T EXPECT

10   IT TO HAPPEN WHEN YOU SIGNED UP.  AND THOSE ARE TWO ARGUMENTS

11   THAT WOULD BE CLASS-WIDE ARGUMENTS, AS OPPOSED TO FOCUSING ON

12   THE PARTICULAR SOLICITATION.

13         BUT IF YOU'RE USING THE SOLICITATIONS TO SUPPORT

14   EITHER OF THOSE ARGUMENTS, THEN THE QUESTION BECOMES HOW THOSE

15   SOLICITATIONS ARE DIFFERENT ENOUGH THAT THE CASE FOR EACH OF

16   THESE GROUPS THEY'VE GOT, ONE OR THE OTHER OF THE SOLICITATIONS

17   MIGHT BE DIFFERENT, AND THAT WAS WHAT I THINK MS. STRICKLAND

18   WAS TRYING TO POINT OUT.

19         SO, I WOULD ASK YOU, IF YOU ARE USING THESE

20   SOLICITATIONS TO SUPPORT IN A PARTICULAR WAY EITHER OF THOSE

21   ARGUMENTS, HOW THOSE WOULD BE USED BASED ON A CLASS EXPERIENCE,

22   AS OPPOSED TO AN INDIVIDUAL EXPERIENCE, GIVEN THE PARTICULAR

23   LANGUAGE OF WHAT MIGHT HAVE BEEN PROMOTED IN ANY GIVEN

24   SOLICITATION?

25         **MS. CABRASER:**  YES.

1          **THE COURT:**  DO YOU WANT TO HIT THAT ONCE BEFORE YOU

2     SIT DOWN?

3          **MS. CABRASER:**  YES, WE DO.  THESE ARE STANDARDIZED

4     SOLICITATIONS IN TERMS OF WHAT THE ESSENTIAL DEAL TERMS ARE,

5     AND THE DEAL TERMS STAY THE SAME THROUGHOUT THE VARIOUS FORMS

6     OF THE LETTER.

7          **THE COURT:**  WHAT ABOUT THE EXAMPLES THAT ARE GIVEN

8     FOR PURCHASES, FOR EXAMPLE?  THAT'S WHAT MS. STRICKLAND SAYS

9     THAT SHE BELIEVED THAT YOUR ARGUMENT WAS THAT THESE WOULD BE --

10    THAT PEOPLE HAD A REASONABLE EXPECTATION --

11         **MS. CABRASER:**  NO.

12         **THE COURT:**  -- THEY WOULD BE USED FOR LOANS THAT

13    WOULD TAKE A LONG TIME TO PAY OFF, BUT THEN SOME OF THE

14    EXAMPLES OF HOW THE LOANS COULD BE USED WERE FOR SHORTER-TERM

15    OR, LET'S SAY, SMALLER PURCHASES.

16         **MS. CABRASER:**  AND WE DON'T SEE THAT AS MATERIAL.  WE

17    DON'T SEE THAT AS A DIFFERENCE, BECAUSE IF THAT WERE TRUE, IF

18    WHAT YOU WERE PURCHASING MATTERED TO THE DEAL, THEN CHASE WOULD

19    HAVE OFFERED DIFFERENT APR'S WHETHER YOU WERE BUYING A SWEATER

20    OR A MAJOR APPLIANCE, YOU KNOW, A MAJOR PURCHASE, AND IT

21    DIDN'T.

22         THESE WERE EXAMPLES OF WHAT YOU COULD USE THE CHECK

23    FOR.  THEY WERE ILLUSTRATIONS.  BUT THE SOLICITATIONS NEVER

24    SAID:  WELL, THIS MONTH FOR PEOPLE THAT WANT TO BUY SWEATERS,

25    WE'RE OFFERING THIS APR AND THESE TERMS, AND THEY DIDN'T HAVE

1  ANOTHER SOLICITATION THAT SAID, FOR PEOPLE WHO NEED A LITTLE

2  EXTRA BREATHING ROOM, WE ARE GOING TO OFFER A DIFFERENT DEAL.

3           SO THE DEAL TERMS DID NOT CHANGE.  THE MARKETING

4  ILLUSTRATIONS WERE DIFFERENT, BUT THEY ARE NOT MATERIAL

5  DIFFERENCES WITH RESPECT TO HOW ONE OBJECTIVELY VIEWS THE

6  CONTRACTUAL RELATIONSHIP, THE DEAL TERMS, THE RELATIONSHIP OF

7  THE PARTIES, AND REASONABLENESS ON EITHER SIDE OF THE EQUATION.

8           **THE COURT:**  LET'S SAY IT'S THE DEFENSE, IRRESPECTIVE

9  OF WHETHER IT'S YOUR POSITION, ALL RIGHT?  AND THE DEFENDANT

10 WANTS TO COME IN AND SAY:  WELL, THAT'S ALL WELL AND GOOD WHAT

11 THE PLAINTIFF ANTICIPATED, BUT, LOOK, WE TOLD THEM IN THIS ONE

12 THAT IT WAS SOME SMALL PURCHASE THIS WOULD BE GOOD FOR DURING

13 THE HOLIDAYS OR SOMETHING LIKE THAT.  THAT MIGHT BE A STRONGER

14 ARGUMENT THAN IF WHAT THEY PROMOTED IN A DIFFERENT PIECE OF

15 LITERATURE WAS SOMETHING THAT WOULD BE MORE EXPENSIVE AND TAKE

16 LONGER.

17          I WOULD HAVE TO LOOK TO SEE IF THEY ARE REALLY

18 DIFFERENT IN THAT WAY.  BUT MAYBE SOMEONE ELSE -- IS IT YOUR

19 UNDERSTANDING THAT ALL OF THESE KIND -- I KIND OF STOPPED

20 MYSELF MID SENTENCE.  IS IT YOUR UNDERSTANDING THAT ALL OF

21 THESE PURCHASES THAT WERE SUGGESTED AS EXAMPLES OF WHAT PEOPLE

22 COULD DO WITH THE CHECKS, THAT THOSE PURCHASES WERE SMALL

23 ITEMS?

24          **MS. CABRASER:**  I'D TO HAVE LOOK AGAIN AT THEM.

25          **THE COURT:**  OKAY.

1          **MS. CABRASER:**  I THINK THEY WERE ASSORTED ITEMS.

2          BUT TO ANSWER YOUR QUESTION DIRECTLY:  IF CHASE AT

3   TRIAL WERE TO MAKE THAT POINT, THEN OUR RESPONSE WOULD BE THIS:

4   CHASE, LET'S LOOK AT YOUR RECORDS, LET'S LOOK AT YOUR ANALYSES,

5   LET'S LOOK AT YOUR WATERFALL BY WHICH YOU SELECTED THE EXACT

6   INDIVIDUALS THAT WOULD BE SUBJECT TO EACH OF THESE TWO CHANGE

7   IN TERMS, OKAY?

8          CHASE LOOKED AT THOSE TRANSACTIONAL RECORDS.  CHASE

9   MADE THE ANALYSIS BEFORE IT PICKED THE PEOPLE AND BEFORE IT DID

10  THE CHANGE IN TERMS.  SO BY THE TIME THE CLASS MEMBER GETS THE

11  CHANGE IN TERMS, CHASE ALREADY KNOWS EVERYTHING ABOUT THAT

12  HISTORY, THAT BORROWER'S HISTORY.

13         AND LET'S LOOK AT CHASE'S DOCUMENTS FROM THE TIME,

14  WHICH YOU HAVE --

15         **THE COURT:**  OKAY.  WHY IS THAT RELEVANT?  WHY IS

16  ANYBODY LOOKING AT THAT?

17         **MS. CABRASER:**  BECAUSE, BECAUSE, YOUR HONOR, WHEN

18  CHASE WAS DECIDING WHO WAS GOING TO BE IN THIS CLASS, BY

19  DECIDING WHO WAS GOING TO BE TARGETED -- AND THAT'S CHASE'S

20  WORD, NOT MINE.

21         **THE COURT:**  I SEE WHERE YOU'RE GOING, BUT I DON'T

22  KNOW IF THAT WORKS.

23         **MS. CABRASER:**  THEY DIDN'T LOOK, CHASE DIDN'T LOOK AT

24  WHAT THE PURCHASE WAS.

25         **THE COURT:**  NO, NO.  I UNDERSTAND.  YOU'RE SAYING

1   CHASE LUMPED THEM ALL TOGETHER, SO NOW THEY ARE STUCK WITH THEM

2   AS A CLASS.  I UNDERSTAND THAT.

3           BUT IF THE DEFENSES COULD BE MARKEDLY AFFECTED IN A

4   DIFFERENT WAY BY THE SOLICITATION, THEN THAT WOULD BE SOMETHING

5   I DO WANT TO LOOK AT, THE SOLICITATIONS, TO SEE IF THAT WOULD

6   BE THE CASE.  SO --

7           **MS. CABRASER:**  AND, YOUR HONOR, I THINK WE COULD ALL

8   LOOK FOR A VERY LONG TIME --

9           **THE COURT:**  WELL, I AM GOING TO LOOK.

10          **MS. CABRASER:**  AT ALL THE SOLICITATIONS.

11          **THE COURT:**  AGAIN --

12          **MS. CABRASER:**  AND YOU WILL.

13          BUT NO MATTER HOW OFTEN WE LOOK, WHAT WE ARE GOING TO

14  FIND IS THAT WHAT'S IN THE LARGE PRINT AND WHAT IS A CONSTANT

15  THROUGH EVERY SINGLE SOLICITATION IS THAT THIS IS AN OFFER OF A

16  LOAN, A CHECK LOAN, FOR A LOW FIXED APR AT A TWO PERCENT

17  MINIMUM PAYMENT, AND THAT IS GOOD FOR THE LIFE OF THE LOAN, AND

18  IT DOESN'T MATTER HOW QUICKLY OR OVER WHAT PERIOD OF TIME THE

19  CUSTOMER CHOOSES TO PAY FOR IT.

20          **THE COURT:**  ALL RIGHT.  I'M GOING TO GO BACK --

21          **MS. CABRASER:**  IT'S ALWAYS TRUE.

22          **THE COURT:**  I AM GOING TO GO BACK, LET MS. STRICKLAND

23  HAVE HER RESPONSE, AND THEN I'M PROBABLY GOING TO TAKE IT UNDER

24  SUBMISSION AT THAT POINT.  I AM NOT GOING TO RULE TODAY ON

25  THIS.  OKAY.

1           **MS. CABRASER:**  ALL RIGHT.

2           **THE COURT:**  I WANT TO GIVE HER A CHANCE, NOW THAT

3   SHE'S HEARD YOUR ARGUMENT, AND I THINK I UNDERSTAND WHERE SHE'S

4   COMING FROM -- I DON'T KNOW IF THIS IS GOING TO WORK FOR HER,

5   BUT I WANT TO HEAR HER LAST POINT ON THIS.

6           **MS. CABRASER:**  YOUR HONOR, WOULD IT BE POSSIBLE TO

7   MAKE A BRIEF REPLY?

8           **THE COURT:**  DEPENDS.

9           **MS. CABRASER:**  THANK YOU.

10          **MS. STRICKLAND:**  YOUR HONOR, I HEARD MS. CABRASER

11  ARTICULATE HER CASE, BUT I ACTUALLY HAVE THE BENEFIT OF THE

12  COMPLAINT IN FRONT OF ME, WHICH IS A DIFFERENT ARTICULATION OF

13  THE CASE THAN THAT WHICH WAS JUST PRESENTED TO YOU.

14          **THE COURT:**  WHICH PAGE ARE YOU ON?

15          **MS. STRICKLAND:**  YOUR HONOR, THIS IS ACTUALLY

16  THROUGHOUT THE COMPLAINT, BUT I WILL GIVE YOU SOME EXAMPLES.

17          **THE COURT:**  WHAT PAGE?

18          **MS. STRICKLAND:**  THE ENTIRE THEORY OF THEIR CASE IS

19  THAT THIS WAS A FIXED LONG-TERM LOAN.  THAT'S WHAT THE CASE ALL

20  ABOUT, STARTING WITH PARAGRAPH ONE, PARAGRAPH TWO, PARAGRAPH

21  TWENTY-FIVE.

22          BUT, MOST INTERESTINGLY, PARAGRAPH 30, WHICH IS THE

23  SOLICITATION THAT THEY'RE NOW TRYING TO WRITE OUT OF THE CASE,

24  WHICH SAYS IN MARKETING THE LOANS TO CUSTOMERS -- CONSUMERS --

25  I'M SORRY -- CHASE POSITIONED THE LONG-TERM FIXED RATE LOANS AS

```
 1  COMPETITIVE WITH OTHER LOANS IT CONSIDERED SIMILAR TO THE

 2  LONG-TERM FIXED RATE LOAN THAT IT WAS OFFERING SUCH AS

 3  UNSECURED PERSONAL LOAN, HOME EQUITY LOAN, AUTO LOAN.

 4          THE COURT:  OKAY.

 5          MS. STRICKLAND:  THIS IS THEIR THEORY.  IT'S NOT THE

 6  THEORY THAT WAS JUST ARTICULATED.  IT IS REPEATED AGAIN IN

 7  PARAGRAPH 36.

 8          THE COURT:  WHY DO YOU THINK THIS IS DIFFERENT THAN

 9  WHAT MS. CABRASER SAID?

10          MS. STRICKLAND:  BECAUSE MS. CABRASER SAYS IT DOESN'T

11  MATTER IF IT WAS AN INCIDENTAL PURCHASE OR A LONG-TERM, MORE

12  SUBSTANTIAL PURCHASE, THE POINT IT'S ALL THE SAME, BUT THAT'S

13  NOT WHAT THEIR COMPLAINT SAYS.  THEIR COMPLAINT CALLS OUT WHAT

14  THEY PERCEIVE TO BE LONG-TERM TYPE COMMITMENTS.  THEY USE THAT

15  TERM.  THEY SAY THESE TERMS -- THESE LOANS WERE NOTHING LIKE

16  THE UNSECURED PERSONAL LOANS, HOME EQUITY LOANS OR NEW AUTO

17  LOANS AT PARAGRAPH 36.

18          THE COURT:  PARDON ME?  I'M SORRY.

19          MS. STRICKLAND:  I'M SORRY.

20          THE COURT:  I'M MISSING THE POINT.  I THINK WHAT

21  THEY'RE SAYING IS IF YOU COULD PAY OFF THESE LONG-TERM LOANS

22  WITH -- I'M NOT SURE IF SHE'S TRYING TO SAY IT WAS MARKETED TO

23  PAY OFF LONG-TERM LOANS, SO THEN YOU WOULD THINK YOU WOULD HAVE

24  THE INTEREST RATE FOR THE SAME LENGTH AS THAT LONG-TERM FIXED

25  RATE LOAN WOULD HAVE, OR SHE'S JUST COMPARING IT HERE AS
```

 1  SIMILAR TO.

 2          BUT LET'S SAY -- THAT SOUNDS LIKE IT IS CONSISTENT

 3  WITH WHAT MS. CABRASER WAS SAYING HERE JUST A LITTLE WHILE AGO,

 4  THAT THE EXPECTATION, AS ARGUED BY HER, IS THAT YOU WOULD HAVE

 5  A LOAN THAT WOULD ESSENTIALLY GO ON WITHOUT ANY CHANGE IN

 6  TERMS.

 7          NOW, I BELIEVE THAT YOU WANT TO ARGUE THAT THAT IS

 8  NOT SHOWN BY THE SOLICITATIONS AND THAT SOME OF THE

 9  SOLICITATIONS DIFFER IN THAT REGARD, BUT MAYBE YOU DIDN'T WANT

10  TO ARGUE THAT.

11          **MS. STRICKLAND:**  THE THEORY OF THEIR CASE, AS IT'S

12  ARTICULATED IN THE COMPLAINT, IS THESE WERE EQUIVALENT TO

13  THINGS LIKE HOME EQUITY LOANS.

14          **THE COURT:**  OKAY.

15          **MS. STRICKLAND:**  AND AUTO LOANS.

16          **THE COURT:**  ALL RIGHT.

17          **MS. STRICKLAND:**  OUR POINT IS THAT THE SOLICITATIONS

18  DIFFER, AND THAT'S NOT WHAT THE SOLICITATIONS ALL SAY.

19          **THE COURT:**  WAIT A MINUTE.  DO SOME SOLICITATIONS SAY

20  WHAT SHE IS STATING IN HER COMPLAINT?  MS. CABRASER, FOR

21  EXAMPLE, AT 30?  PARAGRAPH 30?  AND SOME OF THEM DON'T?

22          IN OTHER WORDS, IF WHAT YOU'RE TRYING TO SAY IS:  SHE

23  MAY HAVE A PRETTY GOOD CASE FOR THIS GROUP THAT'S GOT THIS

24  SOLICITATION, BUT THIS OTHER GROUP GOT AN ENTIRELY DIFFERENT

25  SOLICITATION, AND WE HAVE A MUCH STRONGER ARGUMENT ON THAT, AND

 1  THERE'S NO WAY YOU CAN TREAT THESE PEOPLE EQUALLY.  NOW, IF

 2  THAT WERE THE CASE, IF YOU COULD SHOW THAT THAT --

 3        **MS. STRICKLAND:**  I THINK THAT'S EXACTLY OUR POINT.  I

 4  DON'T THINK THEY HAVE A GOOD CASE ON ANYBODY, OBVIOUSLY.  BUT I

 5  THINK THAT THE SOLICITATIONS THE WAY THEY HAVE FRAMED UP THE

 6  CASE IN THE COMPLAINT VARY.

 7        BUT CAN I ALSO MAKE ANOTHER POINT, WHICH IS, WE KEEP

 8  HEARING ARGUMENT ABOUT THE REASONABLE EXPECTATION FROM THE

 9  CONTRACT.  THE CONTRACT CLAIM HAS BEEN RULED ON BY THIS COURT.

10  WE ARE HERE ON THE BREACH OF THE IMPLIED COVENANT CLAIM, WHICH

11  MEANS THEY NEED TO SHOW SOMETHING DIFFERENT.

12        **THE COURT:**  I THINK YOU ARE MISINTERPRETING

13  MS. CABRASER'S ARGUMENT, THE COURT'S DISCUSSION OF THE MATTER.

14  NOBODY'S GOING BACK TO TAKE BACK A RULING THAT WAS IN YOUR

15  FAVOR ON THE EARLIER MATTER.

16        LET'S JUST MOVE ON.  FRANKLY, I HAVEN'T HEARD YET

17  WHERE YOU FEEL THAT THE DIFFERENCES ACTUALLY LIE THAT ARE

18  MATERIAL TO THE POINT THAT THEY'RE MAKING, WHICH WAS AN

19  EXPECTATION OF A LONG-TERM LOAN.  IF IT'S BASED ON THE

20  SOLICITATIONS AND THE SOLICITATIONS WERE DIFFERENT, THEN THAT

21  MIGHT BE A POINT THAT YOU COULD MAKE, AND I GUESS I'LL GO BACK

22  AND LOOK.  BUT, AS I SAY, IT WOULD HAVE BEEN HELPFUL TO HAVE

23  THAT POINT MADE CLEAR EARLIER IF THAT'S YOUR STRONGEST POINT.

24        I'LL ALSO GO BACK AND LOOK AT NEMEC, BUT I THINK

25  THAT, ULTIMATELY, THAT MAY BE WELL BE FOUND TO BE NOT AN

1 INDIVIDUALIZED MATTER.  BUT, AGAIN, IF YOU WANTED TO POINT ME

2 TO SPECIFICALLY WHERE, I CAN'T FISH IT ALL OUT NOW, BUT I'LL

3 MAKE A NOTE OF IT.  I WILL GO BACK AND LOOK AT IT.  I AM GOING

4 TO GO BACK AND LOOK AT IT ANYWAY.

5          **MS. STRICKLAND:**  YOUR HONOR, WE ACTUALLY PUT THOSE IN

6 THE O'DONNELL DECLARATION.  I POINTED OUT SOME OF THOSE

7 DIFFERENCES.  WE DO THINK --

8          **THE COURT:**  LET'S SEE HERE.  HANG ON, RUSTLING

9 PAPERS.  I'M NOT SURE IF I HAVE THAT WHERE I CAN GET MY HANDS

10 ON IT QUICKLY.  SOMEBODY IS POINTING IT IS UP HERE.  I HAD

11 SOMEONE BRING IT OUT HERE.  I MAY NOT HAVE IT IMMEDIATELY IN

12 FRONT OF ME RIGHT NOW, AND IF I DON'T, I DON'T.  YES, I DO.

13 I'M SORRY.  I DO.  IT GOT BURIED.

14          **MS. STRICKLAND:**  BUT, YOUR HONOR, ALSO, THIS IS NOT

15 OUR ONLY POINT.  I KNOW WE'VE SPENT A LOT OF TIME ON IT TODAY

16 RESPONDING.

17          **THE COURT:**  IT'S ONE THAT'S INTERESTING.

18          **MS. STRICKLAND:**  RIGHT.

19          **THE COURT:**  THAT'S WHY I'M FOCUSING ON IT.  SOME OF

20 YOUR OTHER POINTS I ALREADY THOUGHT ABOUT.

21          OKAY.  WHERE WOULD YOU LIKE ME TO LOOK?  DO YOU WANT

22 TO GET THE O'DONNELL DECLARATION IN FRONT OF YOU?  EXHIBIT B-1

23 HAS SOLICITATIONS.

24          **MS. STRICKLAND:**  YOUR HONOR, A PERFECT COMPARISON IS

25 TAKING THE SOLICITATION THEY RELY ON IN THE COMPLAINT, JUST BY

1  WAY OF EXAMPLE, AT PARAGRAPH 30, WHICH IS THE --

2          **THE COURT:**  OKAY.

3          **MS. STRICKLAND:**  -- BOX SOLICITATION.

4          **THE COURT:**  JUST A MINUTE.  YOU WANT ME TO COMPARE

5  THAT WITH ONE OF THE O'DONNELL EXHIBITS?

6          **MS. STRICKLAND:**  RIGHT.

7          **THE COURT:**  OKAY.  RIGHT HERE THEY'RE JUST MAKING --

8  OKAY.  THIS IS THE ONE WITH THE UNSECURED PERSONAL LOAN, HOME

9  EQUITY LOAN, AND NEW AUTO LOAN.  OKAY.  THAT WAS A PRETTY GOOD

10  ONE FOR THE PLAINTIFF.  THAT'S WHY THEY USED IT.  YOU SAY THERE

11  ARE OTHERS THAT AREN'T AS GOOD, AND THAT WOULD MAKE THEM

12  DIFFERENT CLAIMS.

13          **MS. STRICKLAND:**  SO, FOR EXAMPLE, YOUR HONOR, EXHIBIT

14  B-4 TO THE O'DONNELL DECLARATION --

15          **THE COURT:**  HOLD ON.  I CAN GET THAT IN FRONT OF ME

16  VERY QUICKLY.  ALL RIGHT.  AND --

17          **MS. STRICKLAND:**  -- TALKS ABOUT A VARIETY OF THINGS

18  INCLUDING.

19          **THE COURT:**  OKAY.  TRY AND POINT ME TO A PARTICULAR

20  SECTION OF IT.  I'LL TRY AND HIGHLIGHT WHAT YOU'RE TALKING

21  ABOUT.

22          **MS. STRICKLAND:**  YOUR HONOR, EXHIBIT B-4 TALKS ABOUT

23  HOME IMPROVEMENT, BUT IT ALSO TALKS ABOUT VACATION, WHICH IS A

24  SHORT-TERM USE OF MONEY.

25          **THE COURT:**  WHEN YOU SAY "IT TALKS ABOUT," CAN YOU

1  POINT WHERE IT'S TALKING?

2          **MS. STRICKLAND:**  YOUR HONOR, IT IS ON THE FIRST PAGE

3  OF EXHIBIT 3778.

4          **THE COURT:**  YES.  OKAY.  WAIT A MINUTE.  3778?

5          **MS. STRICKLAND:**  IT'S A BATES NUMBER.

6          **THE COURT:**  SORRY.  I'M IN THREE.  THAT'S THE PROBLEM

7  YOU WANTED ME TO LOOK AT FOUR.

8          **MR. NEWMAN:**  IT IS THREE, YOUR HONOR.  IT'S PAGE 26

9  OF 42 OF DOCUMENT 131.

10          **THE COURT:**  WAIT, WAIT.  DO YOU WANT ME TO LOOK AT

11  B-3 OR B-4.  THAT'S THE FIRST QUESTION.

12          **MS. STRICKLAND:**  YOU CAN START WITH B-3, YOUR HONOR,

13  HOW'S THAT?  SINCE YOU WERE ON B-3.  B-3, AND IT'S DOCUMENT 131

14  PAGE 23 OF 42.

15          **THE COURT:**  I'M SORRY.  PAGE -- YES, I'M LOOKING AT

16  THAT.

17          **MS. STRICKLAND:**  OKAY.  THIRD PARAGRAPH ON THE FIRST

18  PAGE WHERE IT SAYS "RIGHT TODAY SAVE TODAY," RIGHT BELOW THAT.

19          **THE COURT:**  JUST A MOMENT.  OKAY.  I SEE "RIGHT TODAY

20  SAVE TODAY."  WHAT DO YOU WANT?

21          **MS. STRICKLAND:**  "CONSOLIDATE YOUR BILLS."

22          **THE COURT:**  YES.

23          **MS. STRICKLAND:**  "PURCHASE NEW FURNITURE OR A

24  COMPUTER, MAKE A DOWN PAYMENT ON A NEW CAR, TAKE A VACATION."

25          **THE COURT:**  OKAY.  AND THE MAXIMUM THAT THEY CAN

1    WRITE HERE IS HOW MUCH?

2            **MS. STRICKLAND:**  YOUR HONOR, IT VARIED BY CARDHOLDER.

3            **THE COURT:**  OH, OKAY.  DOES THAT MAKE A DIFFERENCE?

4            **MS. STRICKLAND:**  PRESUMABLY, DEPENDING UPON WHAT THE

5    USE WAS FOR.

6            **THE COURT:**  WHAT WAS THE HIGHEST --

7            **MS. STRICKLAND:**  THE AMOUNT YOU COULD WRITE IT FOR

8    WOULD GO TO THE USE, OBVIOUSLY.

9            **THE COURT:**  THEY ONLY GOT A LIMITED NUMBER OF CHECKS.

10   ARE WE TALKING ABOUT FIVE THOUSAND PER CHECK, OR SOMETHING LIKE

11   THAT?

12           **MS. STRICKLAND:**  IT VARIED QUITE A BIT, YOUR HONOR.

13   THERE ARE VERY PEOPLE WHO HAD VERY HIGH LIFE-OF-LOAN BALANCES,

14   AND PEOPLE WHO HAD VERY SMALL BALANCES.  WIDELY DIFFERENT.

15           **THE COURT:**  OKAY.  I LOOKED AT THAT.  NOW, YOU WANTED

16   TO COMPARE THAT WITH WHAT WAS KIND OF A SCHEMATIC HERE.  DO WE

17   HAVE THAT ACTUAL SOLICITATION ATTACHED AS THE EXHIBIT?  YES, WE

18   DO.

19           **MS. STRICKLAND:**  WE DO, YOUR HONOR.

20           **THE COURT:**  I AM LOOKING AT IT.

21           **MS. STRICKLAND:**  IT'S ONE OF THE EXHIBITS TO THE

22   PLAINTIFFS' DEPOSITION.  IT SKIPS EXHIBIT 5.

23           **THE COURT:**  I CAN LOOK ALSO AT THE COMPLAINT.  OKAY.

24           NOW, LET'S SAY THAT YOU HAVE THE -- ONE PERSON GOT

25   THE SOLICITATION EXHIBIT A TO THE COMPLAINT AND ONE PERSON GOT

```
 1   THE SOLICITATION EXHIBIT B TO THE O'DONNELL DECLARATION, RIGHT?
 2   AND WHAT WOULD THE DEFENDANT'S ARGUMENT BE THEN, GIVEN THAT
 3   DISTINCTION?
 4          MS. STRICKLAND:  YOUR HONOR, THAT'S ALSO EXHIBIT A TO
 5   THE COMPLAINT, FOR EASE OF REFERENCE.
 6          THE ARGUMENT WOULD BE THAT, UNDER PLAINTIFFS' THEORY
 7   OF LONG-TERM FINANCE, THAT THE EXPECTATION AS TO WHETHER ONE
 8   REALLY CONSTITUTED LONG-TERM FINANCE VERSUS ANOTHER WOULD BE
 9   VERY DIFFERENT.  YOU DON'T HAVE, QUOTE, LONG-TERM FINANCE TO
10   ENHANCE YOUR WARDROBE OR TAKE A VACATION.  YOU MIGHT HAVE
11   LONG-TERM FINANCE TO -- IN TERMS OF A HOME EQUITY LOAN OR A NEW
12   AUTO LOAN.  THERE IS A SUBSTANTIAL DISTINCTION, AND THEIR
13   THEORY IS LONG-TERM.
14          THE COURT:  OKAY.  OKAY.  ALL RIGHT.  I'M GOING TO
15   GIVE MS. CABRASER HER ONE BRIEF REPLY SINCE THEY HAVE THE
16   BURDEN ON THE MOTION, AS YOU POINTED OUT.
17          MS. STRICKLAND:  THANK YOU, YOUR HONOR.
18          MAY I JUST MAKE ONE MORE POINT, WHICH IS THROUGHOUT
19   MS. CABRASER'S ARGUMENT, THERE'S BEEN A LOT OF ARGUMENT FROM
20   THE PLAINTIFFS, BUT GOING EXACTLY TO THE BURDEN POINT, AND THE
21   CASES ARE VERY CLEAR.
22          ASSURANCES FROM COUNSEL -- AND PARTICULARLY ON THIS
23   DAMAGES POINT BUT AS WELL AS OTHERS -- THAT THEY CAN ACTUALLY
24   TRY THE CASE IN SOME COMMON WAY ARE NOT SATISFACTORY TO MEET
25   THEIR BURDEN, AND WE WOULD SUBMIT THAT BURDEN HAS NOT BEEN MET.
```

1        **THE COURT:**  I THINK THE ARGUMENT HERE IS ALL THE

2   FIGURES ARE THERE, THEY CAN'T BE IN DISPUTE, WHATEVER PERSON

3   PAID THEY PAID, SOME MATH THEY CAN FIGURE IT OUT.  I THINK

4   THAT'S THE POINT BEING MADE.  OKAY IT'S NOT SO MUCH SOFTER

5   EVIDENCE AS HARD EVIDENCE.

6        ALL RIGHT.  MS. CABRASER, AS I UNDERSTAND THEN, THE

7   ARGUMENT IS THAT THE DEFENSE WOULD BE DIFFERENT AND THE

8   STRENGTH OF THE DEFENSE WOULD BE DIFFERENT BASED ON DIFFERENT

9   SOLICITATIONS?

10       **MS. CABRASER:**  AND JUST LOOKING AT THE TWO VERSIONS

11  OF THE SOLICITATIONS THAT YOU JUST WENT THROUGH WITH DEFENSE

12  COUNSEL, EXHIBIT B TO MR. O'DONNELL AND EXHIBIT 5 TO MR. GIBBS,

13  OBVIOUSLY, MR. GIBBS IS A SPECIFIC EXAMPLE THAT ACTUALLY GOT

14  SENT OUT, AND MR. O'DONNELL IS A MORE GENERIC, BUT WE SUBMIT --

15       **THE COURT:**  I'M SORRY.  BY "GENERIC" YOU MEAN?

16       **MS. CABRASER:**  I MEAN IT HAS "XXX" INSTEAD OF A

17  PARTICULAR 3.99 APR, BECAUSE WHAT WE'VE GOT IS WHAT WENT OUT,

18  WHAT WAS RECEIVED BY A CLASS MEMBER, AND THIS IS A -- THIS IS

19  THE MODEL.  AND THE MODEL DOES NOT VARY, WE SUBMIT, IN ANY

20  MATERIAL RESPECT FROM THE SOLICITATIONS THAT WERE GOTTEN.

21       **THE COURT:**  WELL, THE -- LET'S LOOK AT B-3 FOR A

22  MOMENT.  THAT WAS THE ONE THAT I WAS DIRECTED TO.

23       **MS. CABRASER:**  LET'S SEE.

24       **THE COURT:**  DO YOU HAVE THE O'DONNELL DECLARATION?

25  IT IS KIND OF HARD -- THE WAY I HAVE THE TABS ARE ALL ONE ON

1  TOP OF OTHER, SO YOU HAVE TO PEEL IT BACK.

2          **MS. CABRASER:**  I'M WEARING MY GLASSES.

3          **THE COURT:**  SO WEARING YOUR GLASSES AND LOOKING ABOUT

4  IN THE MIDDLE ADJACENT TO WHERE IT SAYS "YYY" PERCENT APR, JUST

5  STARTING SLIGHTLY ABOVE THAT, "CONSOLIDATE YOUR BILLS," AND

6  THEN IT TALKS ABOUT GET FURNITURE, GET A COMPUTER, PUT IT IN

7  YOUR CHECKING ACCOUNT AND USE IT HOWEVER YOU WANT.  OKAY.

8  THAT'S ONE TYPE OF SOLICITATION THEY SAY WENT OUT.

9          EXHIBIT A TO THE COMPLAINT, WHICH IS CROSS REFERENCED

10 IN THE COMPLAINT, HAS A COMPARISON OF INTEREST RATES THAT ONE

11 WOULD HAVE TO PAY ON THESE VARIOUS TYPES OF LOANS THAT SOMEBODY

12 MIGHT HAVE, AND THAT THIS WOULD BE A BETTER WAY TO GET MONEY.

13         **MS. CABRASER:**  MM-HMM.

14         **THE COURT:**  OKAY.  THEN SHE SAYS:  WELL, IF YOUR

15 THEORY IS THAT PEOPLE HAD A REASONABLE EXPECTATION OF A

16 LONG-TERM LOAN AT A FIXED RATE WITH FIXED TERMS, THEN THIS

17 PARTICULAR SOLICITATION THAT COMPARES THE LOAN WITH OTHER

18 SIMILAR TYPES OF LOANS THAT HAVE FIXED TERMS WOULD BE ONE TYPE

19 OF ARGUMENT THE PLAINTIFFS COULD MAKE FOR THOSE PEOPLE WHO GOT

20 THAT SOLICITATION, BUT THAT THERE ARE OTHER PEOPLE THAT GOT

21 SIGNIFICANTLY DIFFERENT ONES, AND THEIR EXPECTATIONS WOULD BE

22 DISTINGUISHABLE IN THAT RESPECT BECAUSE THEY WEREN'T POINTED TO

23 THESE OTHER LONG-TERM, MORE FIXED TYPES OF LOANS.

24         **MS. CABRASER:**  AND, YOUR HONOR, TO US THAT IS

25 IMMATERIAL.

1          WE ALSO NOTE IF THEY WANT TO ARGUE IT'S MATERIAL,

2    IT'S CATEGORICAL, NOT INDIVIDUAL.  SO THAT WOULD BE A TYPE OF

3    SOLICITATION AN IDENTIFIABLE SUBSET OF THE CLASS GOT.

4          **THE COURT:**  ARE YOU SAYING THERE SHOULD BE

5    SUBCLASSES?

6          **MS. CABRASER:**  THAT'S AS FAR AS THAT ARGUMENT COULD

7    GO, AND WE DON'T THINK IT GOES THAT FAR, YOUR HONOR, BUT THE

8    VERY FARTHEST IT WOULD GO, BECAUSE THEY, YOU KNOW, THEY

9    SYSTEMATIZED THIS, AND THEY ARE STANDARD -- YOU KNOW, NONE OF

10   THESE WAS WRITTEN WITH A QUILL PEN, NONE OF THESE ARE

11   COMPLETELY INDIVIDUALIZED, NONE OF THEM HAS A PARTICULAR

12   RECIPIENT IN MIND.  THEY ARE ALL CATEGORICAL.

13         WE SAY WITH RESPECT TO THE MATERIAL TERMS, YOU KNOW,

14   LOW APR, FIXED FOR THE LIFE OF THE LOAN, MAKE YOUR MINIMUM

15   PAYMENTS ON TIME, THAT'S WHAT'S MATERIAL.

16         AND, BY THE WAY, WHAT ALL OF THESE SOLICITATIONS SAY

17   IN ONE FORM OR ANOTHER, DESPITE WHAT PARTICULAR EXAMPLES THEY

18   GIVE OF WHAT YOU COULD USE OF THE MONEY FOR, IF YOU LOOK, FOR

19   EXAMPLE, AT EXHIBIT 5 TO THE GIBBS DECLARATION --

20         **THE COURT:**  WAIT A MINUTE.  WAIT A MINUTE.  WAIT A

21   MINUTE.

22         I WILL HAVE TO WAIT AND GET THAT BECAUSE I DON'T HAVE

23   IT RIGHT HERE.

24         **MS. CABRASER:**  BASICALLY, THEY ALL SAY YOU CAN USE IT

25   FOR WHATEVER YOU WANT.

1          THE O'DONNELL FORM SAYS, "REMEMBER, YOU CAN WRITE

2    CHECKS FOR ANY AMOUNT UP TO THE UNUSED PORTION, AND HOW YOU USE

3    IT IS UP TO YOU."

4          BASICALLY, THEY'RE SAYING THERE ARE DIFFERENT

5    EXAMPLES OF HOW YOU MIGHT USE IT IN DIFFERENT VERSIONS OF A

6    STANDARDIZED, EACH OF WHICH WAS REPLICATED THOUSANDS OF TIMES

7    OVER.

8          WE'RE SAYING WHAT'S IMPORTANT IS WHAT ALL THESE

9    LETTERS SAY IS HOW YOU USE IT IS UP TO YOU, HERE'S HOW YOU USE

10   IT, AND HERE'S WHAT THE DEAL TERMS ARE.  IT'S ALL THE SAME.

11         **THE COURT:**  DON'T THE DEFENSES COUNT, THOUGH, IN

12   DETERMINING WHETHER OR NOT THE ISSUES ARE -- THAT COMMON ISSUES

13   PREDOMINATE TO A CERTAIN EXTENT OR NOT?  IN OTHER WORDS, IF THE

14   PLAINTIFF SAYS:  WELL, THIS -- WE'RE MAKING THE SAME CLAIM AS

15   TO EVERYBODY AND THE DEFENDANT SAYS, BUT THERE ARE DIFFERENCES

16   IN HOW YOU'RE SITUATED AND HOW THE MATTER CAN BE ARGUED, WOULD

17   THAT --

18         **MS. CABRASER:**  THAT ARGUMENT IS NOT AS AVAILABLE TO

19   THE DEFENDANTS HERE AS IT WOULD BE IN A TYPICAL CLASS ACTION.

20         **THE COURT:**  BECAUSE?

21         **MS. CABRASER:**  BECAUSE IN THIS CASE THIS IS NOT A

22   CLASS OF EVERYONE WHO GOT THESE LETTERS AND WHO TOOK OUT THESE

23   LOANS.  THIS IS A CLASS THAT WAS SELECTED BY CHASE OF A

24   SPECIFIC SUBSET, LESS THAN ONE PERCENT OF PEOPLE WHO NOT ONLY

25   GOT THE LETTERS, ACTED IN RESPONSE TO THE LETTERS, TOOK OUT THE

1   LOANS UNDER THE SAME DEAL TERMS, BUT WHO ADHERED TO THE DEAL

2   TERMS IN SUCH A WAY THAT THEY PRESERVED THEIR LOW APR BY MAKING

3   THEIR MINIMUM PAYMENTS TO THE POINT AT WHICH CHASE DETERMINED

4   WITH RESPECT TO THIS DEFINED CATEGORY OF PEOPLE, AND ONLY THESE

5   PEOPLE, THESE ARE NOT SUFFICIENTLY PROFITABLE, THESE ARE THE,

6   QUOTE, LOW ENGAGERS, UNQUOTE.

7          **THE COURT:**  OKAY.  YOU ARE JUST SAYING THEY LUMPED

8   THEM TOGETHER --

9          **MS. CABRASER:**  FOR A REASON.

10          **THE COURT:**  -- AND IF THAT WAS THE BE-ALL AND END-ALL

11  OF THE DISCUSSION, THAT WOULD BE ONE THING, BUT I DON'T BELIEVE

12  THAT IT IS.

13          ONE FINAL THING HERE.  MS. STRICKLAND, I THINK, SAID

14  SOMETIME ABOUT AN HOUR AND A HALF AGO -- IN FACT, I REALIZE WE

15  HAVE BEEN GOING WITH NO BREAK FOR THE REPORTER, AND I DON'T

16  KNOW -- WE'RE GOING TO WRAP THIS UP VERY SHORTLY.  IF SHE WANTS

17  TO STICK IT OUT AND JUST GET OUT OF HERE, THAT MIGHT BE BETTER.

18          (THE REPORTER NODS AFFIRMATIVELY.)

19          **THE COURT:**  OKAY.  WE'LL KEEP GOING.  I HAD NO IDEA

20  THIS WAS TAKING SO, SO LONG.

21          OKAY.  VERY BRIEFLY.

22          SOMEWHERE A LONG TIME AGO I THOUGHT MS. STRICKLAND

23  SAID SOMETHING ABOUT VERY FEW PEOPLE, OR MAYBE ONLY ONE PERSON,

24  GOT EXHIBIT A TO THE COMPLAINT; IS THAT CORRECT?

25          **MS. CABRASER:**  I'M NOT SURE IF THAT'S CORRECT OR NOT.

1   I'M GOING TO ASK MY TABLE FULL OF CO-COUNSEL TO VERIFY THAT OR

2   NOT.

3           **THE COURT:**  OKAY.  JUST STOP FOR A MINUTE.  ONLY ONE

4   PLAINTIFF GOT IT?  ALL RIGHT.

5           AND ARE THERE ANY SIMILAR SOLICITATIONS WITH THIS

6   TYPE OF COMPARATIVE BREAKDOWN, BECAUSE IF THERE AREN'T AND THE

7   AVERAGE PERSON -- IN FACT, EVERYBODY ELSE GOT SOMETHING THAT

8   JUST SAID YOU CAN BUY A TV AND DIDN'T MAKE THIS KIND OF LOAN

9   COMPARISON, THEN MAYBE THIS PERSON JUST DOESN'T BELONG IN THE

10  CLASS.

11          **MS. CABRASER:**  YOUR HONOR, I THINK WE WOULD -- I

12  DON'T HAVE ALL OF THOSE EXHIBITS RIGHT IN FRONT OF ME TO

13  COMPARE THEM, AND I DON'T HAVE THE ANSWER TO YOUR QUESTION, BUT

14  WE CAN GET YOU THE ANSWER TO THAT SPECIFIC QUESTION, BECAUSE I

15  THINK YOU'RE RIGHT.  IF THAT'S A ONE OFF, IF IT TRULY IS A ONE

16  OFF, THEN THAT PERSON MIGHT NOT BELONG IN THIS CLASS AND WE

17  SHOULD DETERMINE THAT NOW, RATHER THAN LATER.  I DON'T THINK

18  THAT'S CORRECT.

19          I THINK THIS WAS ALSO A STANDARD FORM THAT MANY

20  PEOPLE GOT, AND I ALSO THINK WITH RESPECT TO THE MATERIAL

21  TERMS, THE DEAL TERMS IN THAT FORM IT IS LIKE LIKEWISE

22  IDENTICAL.  I WANTED TO PROVIDE THE COURT A COUNTER-REFERENCE

23  TO THE MASTER COMPLAINT PARAGRAPHS, BECAUSE MS. STRICKLAND

24  POINTED OUT VARIOUS PARAGRAPHS THAT SHE THOUGHT --

25          **THE COURT:**  OKAY.

1          **MS. CABRASER:**  -- DEFINED OUR THEORY OF THE CASE.

2          REMEMBER THAT WE HAVE ONE CLAIM IN THIS CASE, AND

3  THAT IS OUR FIRST CLAIM FOR RELIEF.  THE MASTER COMPLAINT STILL

4  ASSERTS THE FACTS AND ALL THE CLAIMS BUT ONLY ONE CLAIM IS

5  OPERATIVE.

6          AND THE PARAGRAPHS THAT ARE SPECIFICALLY PERTINENT TO

7  THAT CLAIM FOR BREACH OF THE COVENANT APPEAR AT PARAGRAPHS 128

8  THROUGH 136 OF THE MASTER COMPLAINT.  AND IN THOSE COMPLAINTS

9  IT'S NOT ABOUT WHAT THE CHECK WAS USED FOR, BECAUSE THE

10 SOLICITATIONS SAID USE IT ANY WAY YOU WANT.  WHAT WE SAID WAS

11 WHAT WAS IMPORTANT WAS LONG-TERM FIXED RATE, LOW APR AS LONG AS

12 MINIMUM PAYMENTS ARE MADE.

13          **THE COURT:**  ALL RIGHT.

14          **MS. CABRASER:**  JUST SO -- LET YOU KNOW OUR THEORY

15 HASN'T CHANGED.  THE PEOPLE IN THE CLASS HAVEN'T CHANGED.

16          **THE COURT:**  IS THERE LANGUAGE THAT SAYS THIS IS

17 LONG-TERM FIXED?  I DON'T THINK IT'S IN THERE.  THAT'S THE

18 INFERENCE.

19          **MS. CABRASER:**  THAT WAS OUR INFERENCE, BUT THAT WAS

20 AN INFERENCE WE MADE IN THE COMPLAINT.

21          **THE COURT:**  OKAY.  THANK YOU.

22          **MS. CABRASER:**  AND IN POINT OF FACT -- I'M SORRY,

23 YOUR HONOR.  I WILL STOP.  I DIDN'T MEAN TO INTERRUPT YOU.

24          **THE COURT:**  I JUST WANTED TO SAY IF THE INFERENCE

25 VARIES FROM SOLICITATION TO SOLICITATION IN A MEANINGFUL WAY,

1  IT MAY BE A PROBLEM THAT MIGHT HAVE TO BE ADDRESSED.  OKAY.

2  THAT'S WHAT I AM LOOKING AT.

3            **MS. CABRASER:**  WE DON'T THINK IT DOES, YOUR HONOR.

4            **THE COURT:**  OKAY.  JUST TO GIVE YOU AN EXAMPLE, IF

5  YOU'VE GOT A WAGE AND HOUR CASE AND SOMEBODY SAYS:  THE

6  DEFENDANT LUMPED US ALL TOGETHER, EVERYBODY WITH THIS TITLE GOT

7  PUT INTO AN EXEMPT EMPLOYEE STATUS, DOESN'T GET MEAL BREAKS,

8  DOESN'T GET OVERTIME, WHATEVER, THAT DOESN'T END THE

9  DISCUSSION.  AND THEN THE DEFENDANT CAN SAY:  YES, BUT WHAT OUR

10 THEORY IS OF WHY YOU'RE THERE IS BECAUSE YOU -- I DON'T KNOW --

11 YOU'RE INVOLVED IN OUTSIDE SALES.  THEN YOU HAVE TO LOOK AT

12 WHETHER OR NOT EACH OF THESE PEOPLE DID THE SAME THING OR

13 WHETHER THEY DID OTHER THINGS.

14            WELL, HERE WHAT'S HAPPENING IS THEY'RE SAYING:

15 HERE'S OUR DEFENSE; YOU DIDN'T HAVE ANY REASON TO THINK THIS.

16 THEN THEY SAY:  LOOK AT ALL THESE DIFFERENT SOLICITATIONS.

17 NOW, THERE ARE ONLY A LIMITED NUMBER.  IT ISN'T THE MILLION

18 THAT ARE IN YOUR CLASS.  BUT I CAN'T EVEN TELL HOW MANY

19 DIFFERENT ONES THERE ARE, HOW MANY DIFFER SIGNIFICANTLY AT THE

20 MOMENT.  ALL OF THIS IS JUST COMING UP KIND OF NOW.  ALL RIGHT?

21            SO I WILL TAKE A LOOK, AND IF WE NEED EXTRA EVIDENCE,

22 WE WILL LET YOU KNOW.  IN OTHER WORDS, AFTER I GO BACK AND LOOK

23 AT IT, IF KNOWING WHAT IS AT LEAST AT THE MOMENT A CONCERN, IT

24 MAY NOT BE THE DISPOSITIVE IDEA HERE, BUT KNOWING IT'S A

25 CONCERN, IF ANYBODY GOES BACK AND THINKS THEY HAVE A QUICK AND

1   EASY ANSWER, THEY CAN PROPOSE ADDING IT TO THE RECORD AND GIVE

2   THE OTHER SIDE A CHANCE TO BE HEARD, BUT THAT WOULD HAVE TO BE

3   NO LATER THAN A WEEK FROM TODAY.  OKAY?  ALL RIGHT.  BECAUSE I

4   DON'T WANT THIS TO BE DRAGGED OUT WHERE I DON'T KNOW WHERE

5   SOMEBODY IS GOING TO DO SOMETHING.

6          SO IF THERE'S SOMETHING THAT BEARS ON THIS PARTICULAR

7   QUESTION OF WHO GOT WHAT AND HOW MANY OF THEM GOT IT, BASED ON

8   WHAT'S BEEN SHOWN HERE, AND EITHER YOU BOTH OR ONE OF YOU

9   THINKS IT WOULD HELP TO CLARIFY THAT, YOU CAN CONSIDER

10  REQUESTING THE ABILITY TO DO THAT.  I DON'T MEAN SURVEYS.  I

11  JUST MEAN THIS UNDISPUTED IDEA OF HOW MANY PEOPLE GOT "X," HOW

12  MANY PEOPLE GOT "Y" SOLICITATION.

13         **MS. CABRASER:**  WE WILL TAKE A VERY CAREFUL LOOK AT

14  THAT, YOUR HONOR.

15         JUST TO MAKE THIS POINT CLEAR, THE LOANS AT ISSUE ARE

16  LIFE-OF-THE-LOAN LOANS, LOL'S.  THAT'S WHAT CHASE CALLS THEM.

17  SO THE CHARACTERISTIC FACTOR IS LOW RATE FOR LIFE OF THE LOAN

18  IF YOU OBEY THE TERMS.  THEY ARE NOT LTL, LONG-TERM LOANS.

19  THAT'S NOT WHAT CHASE CALLED THEM.  THAT'S NOT WHAT WE TOOK

20  THEM --

21         **THE COURT:**  THAT'S AN ARGUMENT.

22         ALL I'M SAYING IS IF THIS BECOMES RELEVANT -- AND I'M

23  NOT SAYING IT'S DISPOSITIVE.  IT'S JUST IF I LOOK AT IT AND I

24  THINK I NEED SOMETHING, I MAY LET YOU KNOW.  IF YOU THINK YOU

25  HAVE AN EASY ANSWER TO DISPOSING OF THE ISSUE WITHOUT CONCEDING

 1  ITS MERIT, EVERYBODY HAS UNTIL NEXT FRIDAY AT 2:00 O'CLOCK TO

 2  DO IT.

 3          **MS. CABRASER:**  ALL RIGHT.

 4          **THE COURT:**  I'M NOT SAYING YOU AUTOMATICALLY CAN.

 5  YOU ARE GOING TO HAVE TO ASK LEAVE TO DO IT, AND THEN WE'LL SEE

 6  WHERE WE ARE.

 7          **MS. CABRASER:**  WE'LL LOOK AT THAT VERY CAREFULLY,

 8  YOUR HONOR.  WE APPRECIATE THAT.  THANK YOU.

 9          **THE COURT:**  ALL RIGHT.  SO I'M GOING TO DEEM THIS

10  MATTER SUBMITTED.  I DON'T KNOW EXACTLY WHEN WE STARTED, BUT

11  IT'S NOW 11:30, AND I THINK IT'S BEEN QUITE A WHILE.

12          SO I WILL AT THIS POINT TAKE IT UNDER SUBMISSION, BUT

13  YOU HAVE THE -- I WON'T RULE BEFORE NEXT FRIDAY.  I'M GOING TO

14  GIVE YOU A CHANCE TO TAKE A LOOK AT THIS MATTER THAT, FRANKLY,

15  I THINK IS JUST BEING CLARIFIED AT THIS POINT.

16          OKAY.  ALL RIGHT.  WE ARE IN RECESS.

17          (PROCEEDINGS ADJOURNED.)

18

19

20

21

22

23

24

25

1

2

3                          CERTIFICATE OF REPORTER

4          I, JOAN MARIE COLUMBINI, OFFICIAL REPORTER FOR THE

5    UNITED STATES COURT, NORTHERN DISTRICT OF CALIFORNIA, HEREBY

6    CERTIFY THAT THE FOREGOING PROCEEDINGS IN MDL 09−2032, IN RE:

7    CHASE BANK, USA, NA, CHECK LOAN CONTRACT LITIGATION, WERE

8    REPORTED BY ME, A CERTIFIED SHORTHAND REPORTER, AND WERE

9    THEREAFTER TRANSCRIBED UNDER MY DIRECTION INTO TYPEWRITING;

10   THAT THE FOREGOING IS A FULL, COMPLETE AND TRUE RECORD OF SAID

11   PROCEEDINGS AS BOUND BY ME AT THE TIME OF FILING.

12         THE VALIDITY OF THE REPORTER'S CERTIFICATION OF

13   SAID TRANSCRIPT MAY BE VOID UPON DISASSEMBLY AND/OR

14   REMOVAL FROM THE COURT FILE.

15

16         _____

17              JOAN MARIE COLUMBINI, CSR 5435, RPR

18                  MONDAY, MARCH 21, 2011

19

20

21

22

23

24

25